## In the matter of ALEXANDER B. WHITING.

The office of health officer in New York is neither a city or county office to be filled by the local authorities, but is included in the class denominated in the Constitution "other officers," to be filled as the legislature may direct.

In proceedings under the Revised Statutes "to compel the delivery of books and papers by public officers to their successors" (1 R. S. 124), it is proper to look into the title to the office, in order to determine who is entitled to their possession.

ON the 29th of December, 1847, Dr. Van Hovenburgh, then health officer at New York, resigned his office, and on the 28th of January he communicated that fact to the board of health, and required them to fill the vacancy, under a statute which authorized that board to supply any vacancy that may occur in the office of either of the health commissioners, whether arising from temporary inability or otherwise, "but the person so appointed shall hold his office only till such inability be removed, or the sense of the governor, or the governor and senate, be declared." The board immediately appointed Samuel Russel Childs, who qualified and entered upon

the duties of the office. At that time Dr. Whiting had been nominated by the governor to the office, and on the 4th of February the nomination was confirmed. On the 14th of February he took the oath of office, and attempted to enter upon its duties, but he was obstructed by Dr. Childs, who claimed to be the lawfully appointed incumbent, and who refused, on demand, to surrender up the books and papers belonging to the office. Application was then made to Judge EDMONDS for a warrant against Dr. Childs, committing him to jail until he surrendered them.

*W. C. Noyes and E. Sandford*, for Dr. Whiting.

*T. W. Tucker and D. B. Ogden*, for Dr. Childs.

*Edmonds, J.:* The provision of the Constitution out of which the question before me has sprung, is the second section of the tenth article, and is the following:

" All county officers whose election or appointment is not provided for by this Constitution, shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature shall direct. All city, town, and village officers, shall be elected by the electors of such cities, towns, and villages, or some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. *All other officers* shall be elected by the people or appointed, as the legislature may direct."

All this would be plain enough if the terms "county officer" or "city officer" had obtained a definite meaning; but, unfortunately, they are not defined in that instrument; they were unknown to our former Constitutions, and they are unknown even to the Revised Statutes, except in the index. We are therefore left to determine what was intended by the use of them in the Constitution, and the difficulty of the con-

jecture is very much increased by the fact that most of the officers connected with this city are appointed in and for "the *city and county* of New York." So, that when a health officer is appointed "for the city of Albany," we can well imagine him to be a city officer; but when he is appointed "for the city and county of New York," it is not so easy to determine whether he is a city or a county officer.

There are certain officers that are very readily understood to be county officers, such as sheriffs, coroners, surrogates, etc., for they are appointed or elected for a county, must reside in the county, and can perform their functions only within the county. So there are officers clearly and easily known, for the same reason, as city officers, such as mayor, recorder, aldermen and the like, and village officers, such as village trustees, and town officers, such as town-clerk, constable, collector, etc.

But there is a large number of officers, both judicial and administrative, whom it is difficult to classify under either of these denominations, and among them is the officer in question.

This difficulty can be appreciated by a reference to the statutes as they existed when the Constitution was framed, and which are by that instrument continued still in force. For instance, notaries public. There shall be one hundred in the *city and county of New York*, so many "in the other cities" as shall be determined, etc., and "so many in each of the counties" as the governor and senate may think proper. (1 R. S. 98.) Now, which is the office of notary public, a city or county office, and especially in regard to New York?

There shall be fifty-four auctioneers for the city and county of New York, four for the city and county of Albany, and one or more for every other city, village or county, etc. (1 R. S. 98.) What is an auctioneer, and especially in New York, a city or county officer?

So as to cullers of staves and heading, of whom it is provided (1 R. S. 99) there shall be a certain number for the city and county of New York, two or more for the city of Hud-

In the matter of Alexander B. Whiting.

son, and so many in the other counties as shall be deemed necessary.

These are a few, only, of the instances of the same kind which are to be found in our statutes, and they are material to the matter in hand, because as to health officer, while in Albany and Hudson he is appointed for those *cities*, in New York he is appointed for the *city and county*. (1 R. S. 100.)

It is said that the health officer is a city officer here because he is so in Albany and Hudson. It may with the same propriety be said that the judges of the Superior Court and Common Pleas are city officers, because they were in like manner appointed for the *city and county*. (1 R. S. 97.)

If it is said he is a county officer, because appointed for the county, the answer is that he is just as much a city officer, because he is just as much appointed for the city as for the county.

It is impossible, therefore, to say that he is either to the exclusion of the other.

I have already remarked that an officer is local — that is a county or city officer — when he is appointed for a city or county, and must reside and perform his functions therein. In such a case there is no difficulty in determining whether he is a city or county officer. But when either of these requisites is wanting, the difficulty of determining that question begins. The health officer is not required by law to reside in this city and county, but the performance of his duties, in fact, requires his residence out of the county, and his functions are to be exercised out of, as well as in the city and county. When to this is added the consideration already mentioned, that in respect to the remaining requisite, it is impossible to say whether he is appointed for the city or county, it seems to me to be an inevitable conclusion that the office of health officer cannot with propriety be pronounced either a city or county officer within the language of the Constitution.

It seems to me, too, that this view of the case removes from this section of the Constitution its apparent obscurity, and renders it plain and simple, easily to be understood. Thus,

"county officers," within the meaning of the Constitution, would comprehend all those who are appointed or elected for a county, must reside, and perform the duties of their offices, within their counties, such as sheriffs, coroners, county clerks, etc. "City, town, or village officers," such as unite the same requisites in respect to their localities, such as mayor, recorder, aldermen and the like. And "all other officers," such as do not unite all these requisites, but are wanting in one or more of them, and including, above all, an office which is appointed both for city and county, and is wanting in both the other requisites. This construction renders all the provisions of the section under consideration, harmonious, and is therefore commended to us as that which ought most readily to be adopted.

And I cannot persuade myself, notwithstanding the ingenuity displayed in the argument, that such was not the intention of the Constitution. When the framers of that instrument entered upon the task of providing the mode of filling the offices necessary to a good government, they could not have overlooked those several pages of the Revised Statutes where they are grouped together, as legislative, executive, judicial and administrative offices; and the most cursory perusal of those pages would have shown them at a glance that many of those offices could not properly be regarded as either county or city. In addition to the cases of that kind I have already alluded to, I will mention another appearing on these pages, namely, inspector of sole leather, which, in New York and Albany, is both a city and county office. In Troy, Hudson, etc., it is a city office. In Lewis, Onondaga, and other counties, it is a county office, and in the port of Sag Harbor is neither. The most obvious provision for this and other kindred cases, was that of this section which provides for all other offices than those which had already been provided for as properly county and city offices. Almost any other provision would have made the machinery of carrying the Constitution into effect, especially in regard to many quite important offices, exceedingly cumbersome and incongruous.

In the matter of Alexander B. Whiting.

Any other construction of the Constitution would, it seems to me, require of me to adopt a standard for the locality of offices, which neither the Constitution nor the statutes have established; or, in other words, to legislate where the convention and the legislature have omitted to do so. That would be quite beyond my province.

The counsel for the defendant in these proceedings were right in saying that the question before me involved the title to this office, and that that title could be determined only on quo warranto, and not on this summary proceeding. I can here only determine the right to the present possession of this office, and that on a *prima facie* case for the complainant. But if it could be made to appear that the governor and senate had no right under the Constitution to make an appointment, then the complainant's *prima facie* right to the possession would necessarily fall to the ground, and his application be dismissed. I have, therefore, been compelled to examine into the title of the parties, in order to determine the right to possession. In doing so I have arrived at the conclusion that this office is one of those which is not necessarily under the Constitution to be elected or appointed by local authority, but is one that is to be elected or appointed as the legislature may direct.

It remains to be seen whether the legislature have so directed, and whether the appointment of Dr. Whiting is pursuant to that direction.

The claim set up in behalf of Dr. Childs in this regard is, that the legislature must direct before an appointment can be made, that this whole matter is *novus hospes*, on which there must first be legislative action under this Constitution before there can be any appointment made.

Under the statutes as they existed when the Constitution was adopted, the health officer was to be appointed by the governor and senate. The Constitution reënacts and continues all the statutes then in force, which were not repugnant to the Constitution. I have already shown that an appointment by the governor and senate was not thus repugnant. So that

when Dr. Whiting was appointed, the health officer might be appointed in such manner as the legislature might direct; and there was an act of the legislature in force directing that he should be appointed by the governor and senate. It seems to me that this is a conclusive answer to the argument unless we are to regard the Constitution as resolving the government into its original elements, excepting only so far as that instrument itself had otherwise specifically provided, a view of things scarcely warranted so long as any effect is awarded to the seventeenth section of the first article of the Constitution.

Dr. Whiting's right to the present possession of the office being thus established, it seems to me that it does not lie in Dr. Childs' power to object to his taking possession, for Dr. Childs is a mere intruder. He was appointed only until the sense of the governor, or governor and senate, was ascertained. The moment it was ascertained, and a knowledge of it brought home to him, his functions utterly ceased, so that whether Dr. Whiting was properly appointed or not, Dr. Childs from that moment ceased to have any authority to act as health officer. It follows that if Dr. Whiting is not the incumbent the office is vacant. This is the effect of the statute under which Dr. Childs was appointed, and of the tenure by which he held his office, and he can now have no right to discharge the duties or to retain the documents and papers of the office.

This matter then appears before me in this aspect, that Dr. Whiting has a clear right to the possession of the office, and that Dr. Childs is a mere intruder into it, his right to it having ceased by the expiration of his term, he having been appointed under a statute which declared that he should hold it only until the sense of the governor and senate be declared. (1 R. S. 115, § 19.)

The case is therefore within the statute authorizing these summary proceedings, " whenever any person shall be removed from office, or the term for which he shall be elected or appointed shall expire " (1 R. S. 124, § 50), as that statute was construed and understood by the Supreme Court, and also by

KENT, Circuit Judge, in the Brooklyn city clerk case. (5 Hill, 616.) All the judges in that case regarded this statute as applicable to a case where the applicant's title was clear, and where the defendant is not in possession under color of lawful right to hold it, and although it is not a substitute for a quo warranto, because it does not establish the title, yet it is kindred and in addition to the remedy by mandamus, which has always been an appropriate mode of settling the possession.

The warrant applied for must, therefore, be granted against Dr. Childs, whose term of office has expired, because of his withholding from. Dr. Whiting, his successor in office, the books and papers in his custody as health officer, or in any way appertaining to that office.