·Shethar agt. Sherman.

---

## SUPREME COURT.

SAMUEL SHETHAR and another, executors, &c., agt. JANE ANTOINETTE SHERMAN and others.

*Extrinsic evidence to explain will — Specific legacies.*

By the different clauses of the testator's will, gifts of railroad stock owned by him were made to his children, and to other persons and societies, literary and religious, in various amounts.  By the twenty-fourth clause he directed, that should there be a deficiency of assets to pay in full all the bequests, the bequests to his children in the first four clauses should first be fully paid.

*Held*, that the gifts of railroad stock were not severally specific legacies required to be paid in full, without reference as to whether there were assets to pay the pecuniary legacies provided in the first four clauses.

Parol contemporaneous evidence not admissible to show intention of testator.

*Special Term, March,* 1883.

*Marsh, Wilson & Wallis,* for plaintiff.

*Theodore W. Dwight,* for defendant A. M. Swift and others.

*George F. Comstock, John McDonald, Everett P. Wheeler, Julien T. Davies, L. Laflin Kellogg, L. D. Olmstead, Chas. Edward Tracy, Gray & Davenport, E. M. Wight* and *R. B. Tunstall,* fór other defendants.

VAN VORST, *J.*—After a careful consideration of the will of the testator John H. Swift, deceased, and the arguments of the counsel who have appeared for the several parties, I reach the conclusion that the legacies, both of money and railroad stock, mentioned in the first four paragraphs of the will in favor of the testator's children and family, are entitled to priority in payment in full over all the others. To my mind there is no ambiguity in the twenty-fourth clause of the will, which calls for extrinsic evidence, or which would justify the receiving in evidence, as expressive of the testator's intention, his letter of the 25th September, 1873, written some days before the actual publication of his will. The admission of such evidence would be in violation of clearly understood rules, which forbid parol contemporaneous evidence to vary the terms of a valid written instrument. The will is the highest and surest expression of the testator's intention. There are, it is true, cases of ambiguity or equivocation which afford exceptions to the rule, but there is nothing in the will under consideration which gives occasion to depart from the rule. This letter will, therefore, be left out of consideration.

What is itself clear, needs no demonstration by extrinsic proof. Cases in which parol evidence may be admitted are referred to and classified in *Hawkins on Wills,* 9-13.

By the different clauses of the testator's will, gifts of railroad stocks owned by him were made to his children and to other persons and societies, literary and religious, in various amounts. But by the twenty-fourth clause of his will, the testator orders and directs that, should there be a deficiency of assets to pay in full all the bequests and the legacies mentioned in his will, they shall not abate equally, but that certain of them should have priority over the others, and he directs

that the bequests made by the first, second, third and fourth clauses shall constitute the first class, and shall be fully paid and satisfied.

He then proceeds to group several legacies in a second class to stand on an equality amongst themselves, and to be next paid and satisfied, and finally he constitutes a third class of legacies to stand on a like equality amongst themselves, and to be next paid and satisfied. With regard to the third class, however, the words are added, "and in case of deficiency shall abate ratably."

Notwithstanding the benevolence of the testator, general and special, which his will so clearly exhibits in making provision for objects and persons which commended themselves to his judgment, conscience and affection, yet as the ties of blood are imperative, it is only natural to suppose that the testator should prefer, in the event that his estate could not meet all the demands which he had imposed upon it, and there should prove to be a considerable or any deficiency, that his children should have precedence in payment over the legacies created in favor of others, and should not abate with them.

It seems quite clear from the language of the twenty-fourth clause above given, that the testator intended that what he had given to his children should be fully satisfied before his means should flow into the other channels indicated by him.

In opposition to this view it is urged by the counsel for the other legatees that all the gifts of the shares in the two railroads mentioned in the will, are specific, and that they possess the attributes and draw to themselves all the peculiar advantages belonging to legacies of that description; and that as the testator at his death possessed those shares or others into which they had been transmuted during his life, in substance the same, these legacies must in any event be paid in full, although there may remain no assets to pay the pecuniary legacies provided for in the first four clauses of the will in favor of the testator's children. This is the most important question in

this controversy, but from what I have already suggested this view cannot, I am persuaded, be sustained.

Taking together all that is said in the will about this stock and its condition there is much, but not enough, to favor the idea that the gifts of the railroad shares were severally specific and should in any event be all satisfied.

Confining ourselves to the words of the bequests alone, the weight of authority would seem to be, that the gifts are not of specific shares owned by the testator. The words of the first clause are: "I give and bequeath to my son John Lakin "also forty thousand dollars of the capital stock of the St. Louis and Iron Mountain Railroad Company, and fifty thousand dollars of the capital stock of the Cairo and Fulton Railroad Company, both stated at par value." The other bequests are substantially in the same words. No number of shares as such are given, but the word "dollars" is uniformly used.

Hawkins adduces as a rule of construction that "a legacy of stock of whatever denomination is not *prima facie* specific, but is a general legacy although the testator may have had stock of the description mentioned sufficient to answer the bequest." In support of that deduction he cites *Simmons* agt. *Vallance* (4 *Bro. C. C.*, 345); *Purse* agt. *Snaplin* (1 *Atk.*, 414); *Sibley* agt. *Perryn* (7 *Ves.*, 523; *Hawk. on Wills*, 301, *marg.*).

In *Tifft* agt. *Porter* (8 *N. Y.*, 516) the facts to justify a conclusion that the gifts were specific, were certainly as imperative as they are in the case under consideration, yet it was there held that the legacies were general. There the testator bequeathed 240 shares of the Cayuga County Bank to his wife, which were to be delivered to her as soon as might be after letters testamentary had been granted and "in lieu of dower." The testator also bequeathed 120 shares in the same bank to another legatee to be delivered in like manner. At his death he owned 360 shares of the stock of the Cayuga County Bank. In that case it was held that the will gave no indication that the shares bequeathed were to be taken from

those owned by the testator, and that in order to make the legacy specific the testator must have used some expression from which an intention to make a bequest of particular stock might be inferred, as, for instance, where the testator uses such language as "my shares," or any other equivalent designation. The cases of *Langdon* agt. *Astor, Executors* (1 *Duer*, 478-546; *S. C.*, 16 *N. Y.*, 9, 33); *Giddings* agt. *Seward* (16 *N. Y.*, 365), are in the same direction.

The rule extends to bequests of any description of stocks or shares capable of being bought in the market. Thus in *Sleech* agt. *Thorington* (2 *Ves. Sr.*, 560) where a gift of £400, East India bonds, to A. in trust, &c., was held to be a general legacy. See, also, *Robinson* agt. *Addison* (2 *B.*, 515); *Ashburner* agt. *Macguire* (2 *Bro. C. C.*, 108) in which it was held that a legacy of "my" £1,000, East India stock, was held specific. In *Mytton* agt. *Mytton* (*L. R.*, 19 *Eq.*, 30) a gift of the sum of £3,000 invested in India security was held by MALLINS, V. C., not to be specific (*Bothamby* agt. *Shersan*, *L. R.*, 20 *Eq.*, 304; *Norris* agt. *Executors, John B. Thompson*, 2 *McCarter*, 493; 16 *N. J. Eq.*, 250).

It may be considered that the classification of gifts as to whether, in particular instances, they are specific or general is difficult. The cases, which are numerous, can hardly be reconciled. And the result reached seems often quite arbitrary.

A leading case (*Ashburner* agt. *Macguire, supra*) was decided by lord THURLOW after great consideration, he having held the same for advisement for two years before he gave judgment (*Chaworth* agt. *Beech*, 4 *Vesey*, 566).

Courts have manifested a reluctance to construe legacies as specific when any doubt clearly existed, from the fact that a specific legacy is liable to be adeemed, in which event the loss of the legatee cannot be made good out of the general estate (*Giddings* agt. *Seward, supra*). It must be conceded, however, that the intentions of the testator, to be gathered from the whole will, must be taken into account in determining this particular question, as well as all others, in the construc-

tion of the will. I have already observed that there is much to justify the classification of the gifts of stock as specific. It is not necessary to allude to the provisions of the will which look in that direction. But all outside expressions, with regard to the gifts of stock, must be controlled by what is said in the twenty-fourth clause with regard to the legacies before declared, and their order of payment.

It is quite clear to my mind that the testator considerately intended that all other interests, however declared, should yield to the superior claims of his children, created in the first four clauses of his will.

This twenty-fourth clause expresses the weightier and controlling intention, and appears to be a summing up of the matter, and in view of it, what might otherwise be well considered specific gifts of railroad shares must yield to the superior direction that all the gifts to his children mentioned in the four clauses should have absolute priority in payment out of all the assets over all other legatees. That I regard as the true construction of that clause.

The result thus far reached is that out of the personal estate of the testator the legacies and bequests in favor of the persons mentioned in the first four clauses of the will shall be paid in full, in the order and upon the principles therein expressed, and what remains after satisfying those bequests shall be applied in the payment of the other legacies declared in the will, in the order of preference and manner mentioned in the twenty-fourth section of the will.

In no view of the case has any of the gifts been adeemed. Neither the change of the stocks in the testator's lifetime, in pursuance of the terms of the consolidation of the two railroads, nor the sale of the newly issued stock by Mr. Nathaniel Jarvis, as the committee of the testator, who had been adjudged subsequent to the execution of his will to be a lunatic, would have the effect to extinguish the gifts. The new stock in substance took the place of the old, and the sale by Mr.

Jarvis, in a legal proceeding, was in no sense a transaction of the testator.

The testator's son, John Larkin Swift, a legatee named in the first clause of the will, died in the lifetime of the testator, but that contingency had been provided for, and the share given to him will take the direction indicated by the testator in that clause. I discern no real difficulty in effectuating the intention of the testator which is expressed with reasonable clearness, provided the terms of the will be followed. There is no occasion here for any directions other than those given by the testator.

With respect to the provisions in favor of the testator's son, Augustus Muhlenburg, it is sufficient now to say that the gift of the principal sum of sixty thousand dollars in trust for him during life is valid. Upon the event of his death questions may arise the determination of which it is not proper to anticipate. The gift of stock seems to be absolute to him.

I regard the directions of the will, in respect to the sale of the real estate and the purposes thereof, as an equitable conversion of the realty into personalty from the death of the testator. All the proceeds of the sale of the real estate will be needed to carry out the intentions of the testator, as declared in the will, and for the purposes of distribution must be deemed personal assets.

To work such conversion it is not always necessary that the direction to sell should be expressed in imperative language. It is enough if the authority to sell is ample, and the execution of the purposes of the will require it, as they do in this instance. Such conditions impose a duty and amount to a command.

The lapsed legacies fall into the residuary and are disposed of by that clause. I do not find any invalidity in the gifts severally declared, and no reason why they may not be satisfied, if the estate should be sufficient to pay them all in the order above indicated. No objection is interposed as to the validity of any gift except that contained in the twenty-second

clause; with respect to that, one of the counsel in his brief says that it is illegal as creating "a perpetuity," and an unlawful "suspense of the absolute ownership of the property."

I gather that no particular stress is laid upon that point, as no argument is advanced in its support. Judge COMSTOCK, the learned counsel for the four Bishops, has however submitted an able argument in support of that clause, to which no reply has been made, and I am inclined to adopt his view that the legacy is valid, and the gift is therefore upheld. This may not, however, in the end prove to be a practical question, for if what was stated upon the argument as to the value of the entire estate be correct, and if the view taken above with regard to the construction and effect of the twenty-fourth clause be sound, the gifts mentioned in the twenty-second clause may not be satisfied even in part.

The plaintiff's attorneys should prepare findings of fact and law, based upon the principles and conclusions above announced, in which distinct provision should be made for all interests adjudged and in the manner above announced, so that the will may be carried out, as above declared.

A copy of such findings and conclusions should be served upon the attorneys for each of the defendants who have appeared, to the end that amendments if necessary may be suggested by the parties for effectuating their interests under the will. This should be done within five days from the filing of this decision, and a notice of settlement of five days thereafter should be given.