In the Matter of the Estate of JOHN RUSSELL MORSS, Also Known as JOHN R. MORSS, Deceased.

Surrogate's Court, Kings County, October 25, 1937.

762

*Alfred C. Clapp* and *H. Russell Morss, Jr.*, for Herbert R. Morss and Fannie W. Morss, as executors, etc., petitioners, accountants.

WINGATE, S. Whereas, in their request for a construction of the present will the parties have indicated a belief that merely questions of preference and abatement of legacies were involved, an

examination of the facts discloses that the actual problems of the case are far more fundamental and complex.

The gross assets of the estate amounted to $54,875.93, which sum was reduced by debts, funeral and testamentary expenses and losses on assets by $3,324.72 with the services of the present attorneys for the accountants still unrequited.

In addition, the executors have delivered to the widow certain specifically bequeathed property valued at $271, and have paid her a $1,000 general legacy given by the will and an additional sum of $1,500 in compliance with her limited right of election under paragraph (b) of subdivision 1 of section 18 of the Decedent Estate Law. They have also made tax payments aggregating $371.12.

According to their accounts, they, therefore, still have in their hands assets worth $48,875.93 which are stated to be $18,647.72 in cash and $29,228.21 in an unliquidated partnership interest. The $1,000 discrepancy between the balance shown in the summary statement and the aggregate of the admitted remaining assets is not explained and is immaterial for the purpose of the present decision although it requires clarification prior to the entry of the decree.

The will, in addition to the $1,000 outright bequest to the widow, heretofore mentioned, directed the erection for her life benefit of a trust with a principal of $22,000, made general bequests to three sons and a grandson aggregating $12,100, gave $300 to a cemetery for perpetual care of the testator's burial plot and divided the residue of his estate among his three sons in equal shares.

Were all of the assets of the estate in liquid form, no question of construction would arise, since their value obviously considerably exceeds the total of general legacies. Over $29,000 in value is, however, tied up in the partnership firm of R. Blackington & Co., the agreement of which precludes liquidation for a term which will probably not end until February 20, 1943, although it is intimated that a partial liquidation may be possible in 1938.

That the testator was fully cognizant of this potentially frozen state of a portion of his assets is evidenced by the language of items 6th and 7th of his will which direct that the " money received from time to time from the firm " shall be used to pay the bequests; any overplus, after their solution in full, to be distributable as residue. He is silent, however, on the subject of the order of priority of the solution of the several benefits given, and what is potentially more important, fails to indicate with any express certainty the particular variety of receipts from the partnership interest, whether income or principal, which he intends to have applied as received toward the solution of the general gifts made in the will.

The first question for consideration is the immediate distributive rights of the various general legatees in the liquid assets of the

estate, totaling $18,647.72, less the administrative costs which are still payable therefrom and which will presumably reduce the net available sum to approximately $16,000. The aggregate of these gifts which are still unpaid total $32,900 after the reduction of the trust principal for the widow by the $1,500 which she elected to receive outright. In other words, the present cash will permit of present payment of only approximately one-half of the value thus expressly given. How is this to be allocated? Are the legatees to be paid *pro rata* or are some entitled to preferences over others?

It is, of course, a familiar fact that funeral expenses of a decedent to a reasonable amount (*Matter of Smallman*, 138 Misc. 889, 893; *Matter of Randolph*, 146 id. 879, 880; *Matter of Gavey*, 147 id. 332, 335, 336; *Matter of Van Valkenburgh*, 164 id. 295) are payable in preference to gifts to the selected recipients of the bounty of the testator. (*Matter of Wishart*, 149 Misc. 343, 345.) This principle pertains even in the absence of the expression of any testamentary wish on the subject, since the policy of the State in this regard has been codified in the pertinent statute (Surr. Ct. Act, § 216). By express statutory fiat, also, the various items of expenditures in this connection have been enumerated (Surr. Ct. Act, § 314, subd. 3) and include " a reasonable charge or expenditure for the perpetual care of the decedent's burial lot."

An express direction by the testator for the expenditure of a given sum for this purpose cannot be deemed other than as a determination by him of the sum which shall be deemed " reasonable " for the purpose and should be given effect by the courts in preference to the solution of pure donations in the absence of cogent adverse equitable considerations. (Cf. *Matter of Van Valkenburgh, supra.*) No such considerations have here been demonstrated, wherefore it is the duty of the executors to satisfy this item of expense, as directed by the statute (Surr. Ct. Act, § 216), " out of the first moneys received," since even with this additional expenditure, the total payment for funeral expenses cannot be deemed " unreasonable " in view of the size of the net estate.

The next question for decision concerns the right of the widow to have the total principal of her trust erected from the remaining liquid assets in the hands of the executors, in so far as they will suffice for the purpose, in preference to the solution of the rights of the other general legatees.

That an intent to give preference to a gift to or for the benefit of a widow has frequently been imputed to a testator under the law existing prior to September 1, 1930, when a right of dower still existed and before her general elective rights became effective, is a familiar fact. Such preferences, when accorded, have been based on one or another of two diverse theories, namely, either that the

widow was a quasi-purchaser of the accorded bounty by reason of its gift to her in lieu of existing statutory or other rights (*Isenhart* v. *Brown,* 1 Edw. Ch. 411, 413; *Orton* v. *Orton,* 3 Abb. Ct. App. Dec. 411, 415; *Stimson* v. *Vroman,* 99 N. Y. 74, 80; *Bliven* v. *Seymour,* 88 id. 469, 476; *Dunning* v. *Dunning,* 82 Hun, 462, 466; affd., 147 N. Y. 686; *Matter of Smallman,* 138 Misc. 889, 905, 906), or that she was a natural dependent, not otherwise provided for. (*Scofield* v. *Adams,* 12 Hun, 366, 370; *Matter of Neil,* 117 Misc. 498, 502; affd., 238 N. Y. 138, 140; *Matter of Gibson,* 166 App. Div. 1, 7; *Petrie* v. *Petrie,* 7 Lans. 90, 97; *Williamson* v. *Williamson,* 6 Paige, 298, 305; *Shethar* v. *Sherman,* 65 How. Pr. 9, 11.)

To establish the former basis of priority it has uniformly been held to be necessary that the terms of the will expressly or by fair implication require the widow to elect whether she would pursue her statutory rights or accept the proffered gift in substitution therefor. (*Matter of Williams,* 1 Redf. Surr. 208, 214; *Matter of Smallman,* 138 Misc. 889, 906.) The court is familiar with no precedent which has adjudicated the question since the new elective rights of the widow went into effect, but since these were expressly accorded in lieu of dower and other previously existing statutory rights (*Matter of Mihlman,* 140 Misc. 535, 537, 538; *Matter of Greenberg,* 141 id. 874, 875; affd., 236 App. Div. 733; affd., 261 N. Y. 474), can conceive of no reason for any alteration in the previously existing essential prerequisite to a determination of preference on this ground. If the will were to condition the gift on the waiver by the widow of some right accorded by section 18 of the Decedent Estate Law, as for example, that to receive the sum of $2,500 in cash, it might well be determined that an intent to prefer might be imputed, but in the absence of such a situation the requisite " consideration " for the preference moving from the widow is lacking, and there is no basis for holding that the testator intended any preferred treatment of the gift over other benefits of like nature.

Turning now to the basis of preference of dependency and absence of other provision for support, preferment on this ground has always been strictly conditioned on a demonstration of absence of such provision and dependency for support on the testamentary gift (*Bliven* v. *Seymour,* 88 N. Y. 469, 476; *Matter of Wenner,* 125 App. Div. 358, 359; affd., 193 N. Y. 672; *Scofield* v. *Adams,* 12 Hun, 366, 370; *Matter of Schaaf,* 120 Misc. 292, 294; *Matter of Hinman,* 32 id. 536, 538; *Matter of Carr,* 24 id. 143, 146; *Matter of McKay,* 5 id. 123, 130; *Matter of Smallman,* 138 id. 889, 910; *Matter of Rae,* 140 id. 530, 532; *Matter of Porter,* 151 id. 179) which has not here been made.

If, therefore, there were present in this case an actual question of abatement of benefit, there is nothing within the cases upon which

to predicate an imputation of testamentary intent to prefer the payment of the gift for the benefit of the widow.

There is, however, no abatement required on the facts of the present case. The assets of the estate are ample to satisfy all of the general gifts in full and to leave a balance for division among the residuary legatees. The only difficulty is that a portion of the assets are presently frozen and not immediately reducible to cash. This situation is no novelty in these days of unsalable real estate and mortgage moritoria, and, if the beneficiaries are unable or unwilling to accept distribution in kind and the frozen asset cannot be sold, the emergency must be met in a manner identical with that adopted in the cases of other frozen assets by continuing it in the hands of the executors for liquidation. That such a course of procedure was contemplated by the testator is evident from his directions in the 6th and 7th items of the will that the " money received from time to time from the firm " should be used to pay the bequests.

An important question arises at this point as to the variety of payments " from the firm " which may thus be employed in solution of the legacies. The testator has failed to supply the characterization, and on ordinary principles of construction that interpretation of his language should be adopted which would result in validity rather than invalidity of his testamentary directions. (*Morris* v. *Morris*, 272 N. Y. 110, 116; *Matter of Trevor*, 239 id. 6, 16; *Matter of Moores*, 155 Misc. 471, 473; affd., 248 App. Div. 738; *Matter of Sandgren*, 160 Misc. 784, 786; *Matter of Drake*, 153 id. 691, 692.)

The testator obviously intended that his executors should continue to act beyond the usual period of administration for the holding and liquidation of his interest in the partnership. The implied duration of this holding was for the period during which the asset would remain in a frozen condition. By the terms of the partnership agreement this was until 1943. If, therefore, it were to be held that an implied trust was erected by this means it would be measured, not by lives in being as required by the statutes (Pers. Prop. Law, § 11; Real Prop. Law, § 42), but by an arbitrary period of time, which would render it void. (*Beekman* v. *Bonsor*, 23 N. Y. 298, 317; *Rice* v. *Barrett*, 102 id. 161, 164; *Matter of Hitchcock*, 222 id. 57, 72; *Trowbridge* v. *Metcalf*, 5 App. Div. 318, 321; affd., 158 N. Y. 682; *Matter of Stulman*, 146 Misc. 861, 867; *Matter of Kramer*, 153 id. 606, 607.) Such a determination is, however, neither desirable nor necessary since validity for all of the testamentary directions may be attained by holding that the net assets of the estate including the partnership interest vested in the beneficiaries under the will as tenants in common in proportion to their respective interests subject to the powers of

the executors for liquidation and distribution which are the inevitable result of the unwillingness of the legatees to accept payment in kind and the frozen state of the asset.

The result of this determination, vesting actual ownership of the partnership asset in the legatees in proportion to their shares, is to entitle them to the current income thereof as it accrues, the executors becoming in effect mere agents for its collection and distribution. It follows, therefore, that the language of the 6th and 7th items of the will must be interpreted as meaning that the money received from time to time from the firm which is to be applied in payment of the bequests is merely such money as shall constitute a liquidation of the principal value of the asset and not that representing current earnings.

The same result may be attained by reviewing the matter from the standpoint of the residuary legatees. If it were to be held that a trust, even a valid one, had been erected, its beneficiaries would be the general legatees and the remaindermen who would ordinarily each be entitled to their *pro rata* share of the current income. A direction for the use of such income to pay off the principal interests of the general legatees would have the direct effect of a *pro tanto* addition to the value of the ultimate sums receivable by the residuary legatees and would consequently be the exact equivalent of an accumulation of income for their benefit, payable at the time the total of such income payments amounted to the aggregate amount of the general gifts. Since the remaindermen are adults such a direction for accumulation, if necessarily construable from the terms of the will, would be void. (Pers. Prop. Law, § 16; Real Prop. Law, § 61; *Hawthorne* v. *Smith*, 273 N. Y. 291, 298; *Morris* v. *Morris*, 272 id. 110, 118; *Matter of Shupack*, 158 Misc. 873, 876; *Matter of Kuntz*, 160 id. 856, 861; *Matter of Burroughs*, 155 id. 237, 241.)

It follows that the net cash available for the purpose is to be used, first in the payment of the legacy for the perpetual care of the testator's cemetery plot, and the balance distributed *pro rata* to the general legatees including the trustees of the widow's trust. The partnership interest will continue to be held for liquidation by the executors, any income therefrom to be paid to the general legatees, the trustees of the widow's trust and the residuary legatees, in proportion to their interests in the value of this asset. The manner of computation of such interests will be to subtract from the general legacies the amounts presently to be paid these legatees in cash and to add the differences. This total will then be subtracted from the value of the partnership interest as of the date of death, which will give the value of the interest of the residuary legatees therein. As income is received it will be distributed to

those entitled in the proportions which the several interests in the principal bear to each other.

When any sums are received in liquidation of the principal value of the partnership interest, they will be distributed *pro rata* to the general legatees including the trustees of the trust for the widow until these benefits are paid in full, the balance thereafter being payable to the residuary legatees.

There remains for consideration the sum properly payable to the attorneys for the executors. They did not probate the will, their services beginning with the estate tax proceeding. They have filed no memorandum or otherwise assisted in the present proceeding for construction. Bearing in mind the services rendered and the size of the estate the court deems the sum of $1,500 adequate compensation, and this sum will be awarded to cover all services to and including the entry of the decree herein.

Submit decree on notice in conformity herewith.