In the Matter of the Estate of PHILIP O'BRIEN, Deceased.

Surrogate's Court, Westchester County, April 22, 1940.

*Philip J. O'Brien,* as executor and trustee, etc., of Philip O'Brien, deceased, petitioner in person.

*David B. Le Schack,* for the estate of Mary Hart, deceased.

*George B. Overhiser,* for Sarah O'Brien.

*Douglas Macduff,* special guardian.

MILLARD, S. Decedent died on August 17, 1932, leaving a will dated November 27, 1929, and a codicil dated May 20, 1931, in which his wife, Sarah O'Brien, and a nephew, Philip J. O'Brien, were named as executors. Objections to the probate of the codicil were filed by Mary O'Brien Hart, a niece of decedent, and the widow filed a notice of election pursuant to section 18 of the Decedent Estate Law. By decree dated October 15, 1932, the will was admitted to probate and the admission of the codicil to probate was held in abeyance pending the trial of the objections filed. Thereafter, by agreement dated November 30, 1932, between all interested parties, the niece withdrew her objections to the probate of the codicil and the widow's claim to her right of election was compromised as follows:

" 2. That Sarah O'Brien, as the surviving spouse of said deceased, shall be paid from the estate of Philip O'Brien, deceased, the sum of Twenty-seven Thousand Five Hundred ($27,500.00) Dollars, in full settlement of her personal right of election pursuant to Section 18 of the Decedent Estate Law, except as hereinafter provided, which payment shall be in addition to the provisions made for her benefit in said Will and which sum shall be paid to her absolutely and without reservation or abatement by reason of change in existing law or otherwise, as follows:

" The sum of Twelve Thousand Five Hundred ($12,500.00) Dollars thereof in cash promptly upon the making and entry of a decree or order of this Court approving and confirming said settlement; and the balance thereof, of Fifteen Thousand ($15,000.00) Dollars, *upon the decree settling the executors' account.* That upon receiving payment of said sum of Twenty-seven Thousand Five Hundred ($27,500.00) Dollars in full, the said Sarah O'Brien shall execute and deliver a valid release of all her said personal right of election in and to the estate of said deceased, except as hereinafter expressly provided. That said proceeding for the approval and confirmation of said settlement shall be taken promptly and without unnecessary delay." (Italics mine.)

The decedent left an estate valued for transfer tax purposes at $220,958.34 gross and $194,391.64 net. Under the terms of his will,

Sarah O'Brien, the widow, received a legacy of $25,000, the income for life from a trust fund in the sum of $15,000, all household furniture and personal effects, and the life use of the dwelling in which decedent and his wife resided. The balance of the estate is, by various bequests contained in the will, made distributable to various collateral relatives of the decedent, to wit, nephews and nieces, grandnephews and nieces, a cousin, and St. Patrick's Church of Verplancks, N. Y. The bequests to the widow are given " in lieu of any and all dower or any distributive rights to which she might otherwise be entitled in my estate."

On October 18, 1933, the executors filed an account of their proceedings up to July 31, 1933, which was settled by a decree dated November 28, 1933. Pursuant to a stipulation incorporated in said decree, a *pro rata* payment of forty per cent was made on account of all legacies as well as the amount due the widow under the compromise agreement of November 30, 1932. In the years 1936 and 1937 the executors filed informal accounts and made a *pro rata* distribution in a similar manner.

The present proceeding was brought upon petition of Philip J. O'Brien, one of the executors, for the judicial settlement of his accounts up to January 31, 1940, and for a construction of the will in conjunction with the compromise agreement of November 30, 1932, in order to determine the following: (1) whether or not the widow is presently entitled to receive the unpaid balance due under the compromise agreement of November 30, 1932, and (2) whether or not the provisions contained in the will for the benefit of the widow are to be preferred over the other general legacies.

The question of preferential treatment of testamentary provisions by a husband for the benefit of his widow is now well settled. In the absence of an express intention to the contrary, such a preference has been accorded to the widow upon two theories, namely, that she is a *quasi* purchaser of the benefit by virtue of its being in lieu of dower or other statutory rights, or that she is a natural dependent not otherwise provided for. (*Matter of Smallman,* 138 Misc. 889, 905, 906; *Matter of Neil,* 238 N. Y. 138, 140.) The preference in favor of a widow which legal precedent has imputed to a husband, is not easily overcome. The learned surrogate in *Matter of Smallman* (*supra,* pp. 906, 907) stated as follows: " The preferential treatment of a legacy in lieu of dower is very marked, and will apply not only to trust provisions and general legacies in favor of the widow (*Matter of Morris,* 6 Redf. Sur. 304), but also to residuary gifts (*Meyer* v. *Cahen,* 111 N. Y. 270), and will be given priority over a legacy to a child or other dependent for maintenance. (*Williamson* v. *Williamson,* 6 Paige, 298, 305.) Such preference has been

sustained even in the face of a testamentary direction that legacies to children contained in the will ' shall be paid * * * in preference and priority to any other gift or legacy.' (*Rowe* v. *Lansing,* 53 Hun, 210.) "

It is urged that the widow waived whatever right she may have had to a preference by asserting her right of election pursuant to section 18 of the new Decedent Estate Law and by accepting a settlement based upon that right. It is also contended that the widow is guilty of laches.

In *Matter of Neil* (*supra*) the court stated: " It is the testator's mind we seek to read. * * * To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light." Out of a net estate in excess of $194,000 decedent, by the terms of his will, conferred upon his widow only a cash legacy in the sum of $25,000 together with whatever income could be derived from a trust fund in the sum of $15,000. Out of this amount she would have to maintain and pay the carrying charges upon the dwelling of which she received the life use. The uncontroverted evidence is that the widow was and is absolutely dependent upon the bounty of her husband for support. Certainly, upon these facts, the widow would be entitled to preferential treatment. The enactment of section 18 of the new Decedent Estate Law did not, in my opinion, change the rules heretofore laid down with respect to the determination of testamentary preference. The additional sum of $27,500, representing the settlement of her right of election pursuant to section 18 of the Decedent Estate Law, was, by the very terms of the compromise agreement, to be " *in addition to the provisions made for her benefit in said will.*" (Italics supplied.) This language would seem to negative the contention that the widow, by implication or otherwise, relinquished any benefit received by her under the will. In other words, if she is entitled to a preference under the will of her husband, nothing contained in the compromise agreement would, in my opinion, alter that status. Even assuming that the acceptance of a benefit not provided in the will did, in a sense, neutralize the effect of a gift in lieu of dower or other statutory rights, there still remains as a ground for preference the uncontroverted dependency of the widow upon the bounty of her husband.

The mere fact that the widow has accepted a *pro rata* distribution upon prior accountings would not be sufficient to effect an estoppel or a waiver of the rights now asserted by her. The financial condition of this estate certainly has not improved with time. While on the prior accountings the widow may have been satisfied that the assets of the estate would prove sufficient to provide full distribution

to her, its present condition, as demonstrated by the account now filed, justifies apprehension on her part. In any event, the other general legatees have stood to gain and not lose by her failure to act more promptly. I, therefore, hold that the provisions contained in the will of this decedent for the benefit of Sarah O'Brien, the widow, are preferred and not subject to abatement. The opinion of Surrogate WINGATE, in *Matter of Morss* (164 Misc. 761), is not contrary to this holding.

While in view of the above holding the other question raised may well become academic, I am of the opinion and hold that when the parties entered into the compromise agreement on November 30, 1932, they contemplated a decree settling the *final account* of the executors as being the time fixed for the payment of the balance due the widow under said agreement. The course of conduct pursued by the parties since that agreement would seem to indicate that such was the fact. Particularly in view of my holding on the question of preference to the widow, the executors should be afforded full opportunity to realize as much as possible for the benefit of other legatees. If, however, a continuance of the present policy of holding estate assets for future liquidation proves inconsistent with or might in any manner jeopardize the widow's right to a preference, then the rights of the widow shall prevail and distribution will be directed accordingly.

The will is construed and the petitioner is instructed to proceed accordingly.

Settle decree.