In the Matter of the Estate of JANE S. WISHART, Also Known as JANE SUNDALL WISHART, Also Known as JANE WISHART, Also Known as JANE S. LACK, Deceased.

Surrogate's Court, Kings County, November 1, 1933.

*Hamilton & Freeman,* for the executor, petitioner.

WINGATE, S. A novel and interesting composite question of abatement and marshaling is presented by the case at bar. Testatrix's will was executed on May 3, 1930, but by codicil bearing date July 29, 1931, she effected various alterations in the original testamentary provisions. In both instruments every single item of the property which she owned at the time of her death was made the subject of a specific gift.

It has been estimated that her funeral and testamentary expenses and debts will aggregate approximately $4,200, and the question of abatement arises by reason of the fact that the payment of these charges must be wholly made from the proceeds of the sale of specific gifts or from contributions made by the legatees in exoneration of the property given them.

A further complicating consideration is injected into the determination by reason of the fact that the surviving spouse has elected to take his intestate share against the provisions of the will in accordance with the provisions of section 18 of the Decedent Estate Law. It is, of course, obvious that it is within his power so to do, since, although the will antedated the effective date of the statute, the codicil was executed thereafter and, therefore, had the effect of bringing the entire testamentary disposition within the operation of the statute. (*Matter of Greenberg*, 141 Misc. 874, 879; affd., 236 App. Div. 733; affd., 261 N. Y. 474.)

Approaching first the question of abatement by reason of inadequacy of assets for the payment of funeral and testamentary expenses and debts, it is primary that by reason of the statutory enactments contained in sections 212, 216, 222 and 285 of the Surrogate's Court Act, nothing can beneficially pass to legatees, whether specific or general, until these charges, given priority by statute, are paid in full. (*Matter of Smallman*, 138 Misc. 889, 892, 910.) The situation, in effect, is that the specific gifts are made to the designated donees subject to a lien for their *pro rata* of the debts owing by the decedent and the funeral and testamentary expenses incurred and to be incurred by his estate. In the ordinary case such a lien, like any other, is to be satisfied by a sale of the particular article upon which it is imposed. (*Matter of Harbeck*, 142 Misc. 57, 67.) It is, however, open to any donee to exonerate his particular item of property from the burden of the lien, by making payment of the amount thereof.

The additional consideration resulting from the exercise by the surviving spouse of his right of election was contemplated by Surrogate DELEHANTY in his careful and comprehensive decision in *Matter of Devine* (147 Misc. 273). He said (at p. 276): " if the entire estate had been specifically bequeathed the intestate share or any required balance thereof must necessarily be found in property specifically bequeathed to others. So too, if an outright legacy of less than the intestate share is given to the spouse, the source of the balance necessary to make up the intestate share must necessarily be the other assets of the estate."

In the case at bar the manner of the election by the surviving spouse is that envisaged in paragraph (f) of subdivision 1 of section 18 of the Decedent Estate Law. He has expressed his desire to accept two testamentary provisions made for him, and to take in addition thereto a sum sufficient in value to make up the amount of his intestate share.

In his brief he has advanced the thought that his distributive rights under this section of the Decedent Estate Law result in

making him a creditor of the estate. This, of course, is not so. The rights of priority given him by the statute are exactly equivalent to those which he would have possessed had the decedent died intestate. In such case he would have been a mere distributee whose rights are, by the cited sections of the Surrogate's Court Act, expressly postponed to those of creditors whether of the decedent or of the estate.

So far as concerns the effectuation of his right of election as against the property specifically bequeathed by the will, he is in effect vested with a secondary lien upon the assets specifically bequeathed, inferior in position to the lien hereinbefore considered which is imposed for the solution of the debts and estate charges.

In like manner, if any specific legatee desires to exonerate the subject-matter of his gift and take it in specie, he must contribute a sum sufficient to solve this secondary lien as well as the primary one in favor of creditors and estate charges.

The practical solution of the entire question involves first, a determination of the value of the net distributable estate. This is reached by deducting the total of the funeral and administration expenses and debts from the total value of the gross estate, including the items specifically given. If, as is alleged in the petition, the surviving spouse is entitled to take one-half of the net estate by reason of his election, the figure resulting from the foregoing process will be divided by two which gives the value of the husband's intestate share. From this is to be deducted the value of the property specifically bequeathed to him, which he has elected to take in kind. The balance will be the sum which must be paid him in cash.

In order to receive a specific legacy in kind, any other legatee must pay *first*, that proportion of the funeral and administration expenses and debts which the value of his gift bears to the value of all of the assets of the estate, and *second*, that proportion of the sum payable to the electing spouse which the value of the particular specific legatee's gift bears to the total value of the gifts to all specific legatees other than those taken by the surviving spouse.

On the tentative figure submitted in the petition, it appears that the aggregate of the sums required from each specific legatee will approximate fifty-four per cent of the total value of the particular things given, and unless these liens upon the specific gifts are to be promptly paid by the specific legatees, respectively, it will be the duty of the executor in the ordinary process of administration of the estate, to realize upon the items given, in order to obtain funds for the payment of the charges accrued and to accrue.

On ordinary equitable principles, the legatees should be given

a reasonable opportunity to exonerate the subject-matters of their respective gifts, and to this end the executor will be directed to inform each of the opportunity afforded him of so doing and of giving him thirty days within which to make the necessary contributions. In order that there may be no misunderstanding in connection with the matter, it is suggested that a copy of this opinion be sent to each, together with an explanatory letter and an estimate of the amount of contribution needed from each, such inclosures being sent by registered mail. In the event that any legatee fails to make the contribution suggested, which shall, in the first instance not exceed fifty-four per cent of the estimated value of the gift, the executor should proceed to sell the thing given for the best price reasonably obtainable in order to secure the *pro rata* amount due from the property which forms the subject-matter of the particular specific legacy. This, of course, does not apply to the gifts of bank accounts, since, in respect to them, the *pro rata* amounts are capable of withdrawal by the executor for the purpose of exonerating the balances of the gifts.

Whether the particular legatees or any of them make the necessary contributions respectively to exonerate their gifts, or whether the subject-matter of any of the gifts is sold for the purpose of obtaining the *pro rata* amount necessary for contribution, the executor will be under obligation to account to the particular legatee for the amount contributed or for the sales price of the gift sold, as the case may be.

In the opinion of the court this method of conducting the matter most closely approximates a compliance with the injunction of subdivision 2 of section 18 of the Decedent Estate Law, that " the terms of the will shall as far as possible remain effective " after provision for the elected share of the surviving spouse.

Proceed accordingly.