SEYMOUR NATIONAL BANK, ADMINISTRATOR
ETC. ET AL. *v.* HEIDEMAN.

[No. 19,531. Filed December 15, 1961. Rehearing denied January 12, 1962. Transfer denied February 26, 1962.]

*Montgomery & Montgomery* and *Richard H. Montgomery,* of Seymour, for appellants.

*Branaman & Markel* and *Thomas H. Branaman,* of Brownstown, for appellee.

Ax, J.—This is an action instituted by appellants against the appellee for the purpose of obtaining a declaratory judgment on the question of whether any part of the Federal Estate Tax in the estate of Frank H. Heideman, deceased, should be borne by the widow

where the entire amount of the property passing to the widow, except the widow's support allowance, qualifies for marital deduction under the Internal Revenue Code.

The facts were entirely admitted by the pleadings and are undisputed.

Appellants' complaint, omitting formal parts, reads as follows:

1. The plaintiff, The Seymour National Bank, as Administrator de bonis non with the will annexed, is the duly qualified and acting legal representative of the estate of Frank H. Heideman, deceased.

2. The other plaintiffs joining with the legal representative of the estate of Frank H. Heideman, deceased, are all of the interested parties under the will of the decedent, Frank H. Heideman, except the widow of the decedent, who is the defendant herein.

3. Edna Schrader and the Trustees of Trinity Methodist Church, of Seymour, Indiana, who are specific legatees under the will, have heretofore received their full distributive share of the estate and are no longer interested parties in the estate.

4. The decedent, Frank H. Heideman, died testate on April 5, 1958, domiciled at R. R. #1, Seymour, Indiana, in the County of Jackson.

5. The decedent left a total gross estate for Federal Estate Tax purposes of approximately $265,000.00.

6. Of said sum of $265,000.00 the decedent left United States Bonds jointly owned with Emma N. Heideman, his widow, having a value of approximately $25,000.00 and a checking account in the sum of $2,165.33, which was jointly owned with his widow, Emma N. Heideman, and passed to her. The decedent also left real estate owned under a tenancy by the entirety having a value of approximately $20,000.00 which passed to his widow, Emma N. Heideman.

7. The decedent's widow, Emma N. Heideman, elected to take against the will of the decedent,

and as a consequence of her election she became entitled to one-third of the estate which one-third had a total approximate value of $65,000.00. All of the above items qualified for the marital deduction for Federal Estate Tax purposes. The total value of the property in the estate passing to the widow including the jointly owned property, the tenancy by the entirety, and the widow's allowance in the sum of $1,000.00, amounts to approximately $113,000.00.

8. The widow also received a widow's support allowance in the sum of $1,300.00 which did not qualify for the marital deduction under the Federal Estate Tax law.

9. The adjusted gross estate for federal tax purposes amounts to approximately $244,000.00.

10. A dispute has arisen between the plaintiffs and the defendant as to the apportionment of the burden of the Federal Estate Tax and the respective claims of the parties are as follows:

(a) The plaintiffs claim that on final distribution of the estate the share of the estate passing to Emma N. Heideman should be reduced by a proportionate part of the Federal Estate Tax in an amount which would bear the same proportion to the total estate tax as the amount passing to the widow bears to the total amount of the adjusted gross estate for Federal Estate Tax purposes.

(b) The defendant, Emma N. Heideman, claims that the portion of the estate which passes to her should not be reduced by any proportionate part of the Federal Estate Tax since all of the property passing to her, except the widow's support allowance, qualified for the marital deduction.

11. The Federal Estate Tax amounts to approximately either $12,000.00 or $14,000.00, depending on the outcome of this controversy, since the Internal Revenue Service takes the position that the law in Indiana is that the marital deduction must be reduced by the widow's proportionate share of the Federal Estate Tax.

12. Except for the case of *Pearcy* v. *Citizens Bank and Trust Company* (1951), 121 Ind. App. 136, 96 N. E. 2d 918, which was decided on facts arising prior to the 1948 revision of the Federal Estate Tax laws, there is no Indiana determination of this question.

13. As a result of this dispute the plaintiff, The Seymour National Bank, as administrator herein, is unable to determine proper final distribution of the estate.

14. The will of the decedent is silent on the question of apportionment of the incidence of the tax.

15. No final report can be filed in this estate until this question is determined, since the amount available for distribution is dependent upon the determination of this question.

"WHEREFORE, the plaintiffs pray for declaratory judgment determining the question of whether The Seymour National Bank, as administrator herein, on final distribution of the estate should reduce the share of this estate passing to Emma N. Heideman by a proportionate part of the Federal Estate Tax in an amount which would bear the same proportion to the total Federal Estate Tax as the amount passing to the widow bears to the total amount of the adjusted gross estate for Federal Estate Tax purposes.

Appellee filed answers admitting allegations of this complaint and asked that the distributive share of the defendant-appellee be not reduced by any Federal Estate Tax assessed against said estate.

The cause was submitted to the court on the pleadings without the introduction of further evidence. The court returned a declaratory judgment for the appellee, which included a finding of fact. The court held that all property received in the estate of said decedent by the widow, Emma N. Heideman, which qualifies for the marital deduction, is exempt from the Federal Estate Tax, and should not bear or be subject

to the payment of any portion of the Federal Estate Tax assessed against decedent's estate.

The court further held that the widow's support allowance of $1300.00 was chargeable with the same proportionate part of the total Federal Estate Tax assessed against said estate which the said sum of Thirteen hundred dollars bears in proportion to the net taxable estate upon which the total Federal Estate Tax is computed.

The court also ordered that the one-third distributive share and interest of said widow in said estate be computed upon the residue of said estate after deducting the debts and obligations of said estate, including costs of administration, but not including in such debts and obligations any Inheritance Taxes assessed in said estate or any Federal Estate Taxes assessed against said estate, and then to reduce the individual share of the widow, as so computed by any Indiana Inheritance Tax due from her and to further reduce the individual distributive share of said widow, as so computed, by her proportionate share of Federal Estate Tax upon the sum of Thirteen hundred dollars, widow's support allowance, computed as hereinabove provided.

Appellants contend that under the 1954 Indiana Probate Code as a result of the widow's election to take her statutory share of the estate as opposed to the amount provided for her by will, the administrator de bonis non with the will annexed should distribute to the widow one-third of the net estate and that the net estate is determined after deducting the Federal Estate Tax and other items specified by statute. The appellants contend that the 1954 Probate Code has superseded the previously existing case law on apportionment of the incidence of the Federal Estate

Tax. If this result is reached, one-third of the Federal Estate Tax would be paid out of the widow's share.

The appellants in the alternative contend that if the Federal Estate Tax is to be apportioned on equitable principles, in accord with previously existing case law, that the portion of the estate passing to the widow should be charged with the same proportionate part of the Federal Estate Tax as that property bears to the total taxable estate. A contrary result will cause the entire burden of the Federal Estate Tax to rest on the beneficiaries of the will. They further contend that the doctrine of equitable contribution requires that those who assume the common burden of the Federal Estate Tax bear a pro rata share of the burden. If this result is reached, about forty-six per cent (46%) of the Federal Estate Tax would be paid out of the widow's share.

Appellee contends that prior to 1948 the Internal Revenue Code recognized the right of the surviving spouse in community property states and did not include such property in the taxable property of the decedent for Federal Estate Tax and the surviving spouse was not assessable with and paid no Federal Estate Tax on such community held property. In 1948 to remedy this unfairness to a surviving spouse in common law states the Federal Code was amended to allow a marital deduction of all the property passing to the surviving spouse, in any state, not exceeding fifty per cent of the total gross estate for taxable purpose.

Appellee further contends that by that amendment Congress intended to take out of the adjusted gross estate and to exclude from the net taxable estate the amount of property passing to the widow, not exceeding fifty per cent, and to exclude it from the Fed-

eral Estate Tax the same as prior community held property.

Appellee further argues that any legislative enactment must be interpreted, and given effect to, in the light of the conditions existing when the statute was passed and the end sought to be accomplished thereby.

Appellee also says that if the property passing to the widow, Emma N. Heideman, all qualifies for and is included in the marital deduction and not a single dollar of that property is included in the net taxable estate of Frank H. Heideman upon which the Federal Estate Tax is assessed, then it is unfair, inequitable and unjust to charge that property with, or to compel her to pay because of that property, directly or indirectly, any part of the Federal Estate Tax assessed wholly upon property passing to the other beneficiaries of the estate.

It is agreed by all parties that all of the property in this estate passing to the appellee, widow, qualified for the marital deduction except the sum of $1300.00 paid to her as family allowance under the Indiana statute, and that sum, or any tax thereon, is not involved as a question in this case.

After having given plenary consideration to argument of appellant and having studied cases cited by appellant, we are of the opinion that the court below has fairly and justly determined this case.

Under the Federal Estate Tax provision of the Internal Revenue Code, a tax is imposed upon the value of the estates of decedents. The tax is computed by progressive rates applied to the net value of the estate, which is the gross value of all of the property of the decedent, less a number of possible expenses and allowable deductions. One of these deductions is the marital deduction by which the

value of the property passing to the surviving spouse is deducted from the gross value of the estate in determining the net value for application of the tax rate. The marital deduction came into existence under the 1948 Revision of the Internal Revenue Code. The present Internal Revenue Code provides:

> "Section 2056. Bequests, etc., to surviving spouse.
> (a) Allowance of marital deduction.—For purposes of the tax imposed by §2001, the value of the taxable estate shall, except as limited by subsections (b), (c) and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Internal Revenue Code of 1954, §2056.

It appears from reading this section that the value of the property passing to the surviving spouse (limited by §2056(c) of the Internal Revenue Code to 50% of the adjusted gross estate) be deducted from the gross estate for the purposes of determining the taxable estate for the purposes of the tax imposed. In our opinion it indicates that the property included in the marital deduction is eliminated from the estate entirely for federal tax consideration.

There appears to be nothing in the Federal Code that attempts to compute the tax on the individual beneficiaries in an estate. The Federal Estate Tax is not an inheritance tax—it is an estate tax as a whole.

It has been held by the Supreme Court of the United States that the applicable state law as to the devolu-

tion of property—at death should govern the distribution of the estate and the ultimate impact of the Federal Estate Tax. This issue was adjudicated by the Supreme Court in *Riggs* v. *Del Drago* (1942), 317 U. S. 95, 63 S. Ct. 109, 87 L. Ed. 106, 142 A. L. R. 1131. In that case the constitutionality of a New York statute requiring apportionment of estate taxes between beneficiaries was questioned because of its conflict with the Federal Estate Tax Law. In upholding the constitutionality of the New York statute, the Court said:

"We are of the opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of the property at death should govern the distribution of the remainder and the ultimate impact of the federal estate tax; accordingly, §124 is not in conflict with the federal estate tax law. . . .

". . . It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that the state law should determine the ultimate thrust of the tax. . . ."

The court said further in speaking of the collection of *the tax assessed:*

". . . Section 826 (b) does not command that the tax is a non-transferable charge on the residuary estate; to read the phrase 'the tax shall be paid out of the estate' as meaning 'the tax shall be paid out of the residuary estate' is to distort the plain language of the section and to create an obvious fallacy. . . ."

The appellants admit that the principle laid down in the *Riggs* case is the law today and has been consistently followed.

It will be noted that this case was decided before the marital deduction was made a part of the Federal Code in 1948.

In the case of *Rogan* v. *Taylor* (CCA 9th, 1943), 136 F. 2d 598, 599, the Court stated:

". . . The federal estate tax is, as its name indicates, a tax upon the estate as a whole and is payable by the executors, but how its burden is to be apportioned as among the beneficiaries of the estate is a question to be determined by the law of the jurisdiction in which the estate is being administered." Citing *Riggs* v. *Del Drago, supra.*

The Tax Court of the United States has also followed the decision in *Riggs* v. *Del Drago, supra.* In the case of *Estate of Rosalie Cahn Morrison* (1955), 24 T. C. 965, the question was whether in computing the marital deduction the portion bequeathed to the spouse should be reduced by a proportionate part of the Federal Estate Tax and also by the Mississippi estate tax. The Tax Court, on page 968, indicated:

"The general rule in both State and Federal courts is that when neither the will nor the law of the State provides otherwise, the burden of both Federal and State estate taxes 'rests like other administrative expenses on the general estate and is not apportioned among the legatees.' *Rogan* v. *Taylor (C. A. 9), supra; Y.M.C.A.* v. *Davis,* 264 U. S. 47. See also *Amoskeag Trust Co.* v. *Trustees of Dartmouth College,* 200 Atl. 786 (N. H.) wherein numerous decisions of both Federal and State courts are reviewed and holding, under the circumstances above recited, that Federal estate taxes should 'be paid entirely out of residue and not apportioned pro rata among all the beneficiaries.' "

The Indiana probate statute, under which the appellee acted when she elected to take against the decedent's will, is as follows:

"When a married person dies testate as to any part of his estate, the surviving spouse shall have a right of election to take against the will under the limitations and conditions hereinafter stated.

(a) The surviving spouse, upon election to take against the will, shall be entitled to one-third (1/3) of the net personal and real estate of the testator; provided, that if the surviving spouse be a second or other subsequent spouse who did not at any time have children by the decedent and the decedent left surviving him a child or children or the descendants of a child or children by a previous spouse, such surviving second or subsequent childless spouse shall upon such election take one-third of the net personal estate of the testator plus a life estate in one-third of the lands of the testator.

In determining the *net estate* of a deceased spouse for the purpose of computing the amount due the surviving spouse electing to take against the will, the court shall consider only such property as would have passed under the laws of descent and distribution.

(b) . . .

(c) In electing to take against the will, the surviving spouse is deemed to renounce all rights and interest of every kind and character in the personal and real property of the deceased spouse, and to accept such elected award in lieu thereof.

(d) . . ."

Acts of Indiana General Assembly (1953), Chapter 112, Sec. 301, page 309, Burns' Ind. Stats. Ann. 6-301.

The present Indiana Probate Code appears to add nothing to a determination or solution of the question in this case. Indiana, unlike some of her sister states, has no apportionment statute which would clearly define the amounts owed by the parties under the circumstances of this case. Apportionment statutes exist in at least twelve states and were

adopted by them in the following order: New York 1930, Maryland 1937, Pennsylvania 1937, California 1943, Massachusetts 1943, Arkansas 1943, Tennessee 1943, Connecticut 1945, Virginia 1946, Delaware 1947, New Hampshire 1947, and New Jersey 1951. Most of the statutes enacted by the jurisdictions set forth above are patterned after the original New York apportionment statute.

The only case decided in Indiana where the question of apportionment of the Federal Estate Tax was involved and exhaustively discussed is the case of *Pearcy* v. *Citizens Bank and Trust Company* (1951), 121 Ind. App. 136, 96 N. E. 2d 918, a decision by the Appellate Court not involving the marital deduction as the decedent in that case died in 1947, but in that case this Court followed the principle of equitable apportionment of the Federal Estate Tax, and the reasoning and conclusions of the court in that case are, we think, decisive of this case.

The *Pearcy* case involved an intestate estate. Considerable property was held by the widow as non probate property, but that property was included in the gross estate of decedent for estate tax purposes. There was then no marital deduction allowed. All of this property formed a part of the net taxable estate upon which the Federal Estate Tax was assessed. The law was then, as it is now, that the federal tax is assessable against the estate as a whole as decided in *Riggs* v. *Del Drago, supra,* as the appellants admit. The Indiana law was then, as it is now, that the surviving widow took one-third of the personal estate, and one-third of the real estate—if a childless second wife with children of decedent by a former marriage a life estate in one-third of the real estate.

In the *Pearcy* case this Court at page 147 of its opinion said:

"We agree with appellants when they say the net effect of *Riggs* v. *Del Drago, supra,* is that the states *may* legislate on the subject of apportionment of estate tax only because Congress has *not* done so in the Federal Estate Tax Act. By the same token, there is nothing in the Act of Congress to hamper the state courts, in the exercise of their jurisdiction over the administration and settlement of estates, from applying equitable rules whereby, as the result of case law, equitable apportionment of this tax is accomplished in each estate.

"Appellees agree that Federal Estate Tax does not preclude apportionment of the tax by the States. But they contend that in the absence of a state statute providing for such apportionment or of a testamentary provision directing apportionment the burden of the tax must fall upon the residuary or *general* estate of the decedent. (See cases cited.) . . . Some of these cases do tend to lend some support to appellees' position. However, it is to be noted most of them were decided before the case of *Riggs* v. *Del Drago, supra.* For the reasons hereinafter stated we are of the opinion they are based on an erroneous concept of the Federal Estate Tax Act. Furthermore, those cases involved provisions of wills in testate estates, while we are here considering an intestate estate."

The Appellate Court in its opinion in the *Pearcy* case reviews and digests the holdings in a number of cases throughout the country, in all of which the contention is made that the Federal Estate Tax is payable out of the *residue* of the estate, and in each of which cases the courts held that logic, justice and equity required that the beneficiaries pay the tax assessed upon and attributable to the property each received.

The Appellate Court in the *Pearcy* case at page 155, quotes from 19 Am. Jur. (Equity) p. 40, §3, as follows:

"The office of equity is to supply defects in the law. Aristotle defined the nature of equity to be the 'correction of the law where, by reason of its universality, it is deficient.' "

and at Point 6 of its opinion on page 156 said:

"We approve the views expressed in the authorities from which we have quoted so extensively herein. In our opinion they are based on sound principles of law, logic, and justice. Insofar as intestate estates are concerned they represent the majority view of the states which have passed on the questions presented by this case."

The logic, justice and equity arises solely from the fact that the property received by the beneficiary caused or gave rise to that tax. The cases were all decided prior to the marital deduction. The logic, justice and equity is greatly strengthened by Congress enacting into law the marital deduction for a specific purpose, and when every dollar of that property is deducted and excluded from the net taxable estate and upon which no federal tax is imposed. If it is logic, justice and equity to say a beneficiary should pay the tax proportionate to the taxable property received by him, then it follows that if the widow receives no taxable property there is no Federal Estate Tax created by that property and she should pay no Federal Estate Tax on property passing to her and qualifying for the marital deduction.

Appellants cite the case of *Salvation Army, Inc. et al.* v. *Hart et al.* (1958), 239 Ind. 1, 154 N. E. 2d 487, as furnishing some light on this question. We find nothing in the opinion disclosing that the question raised here was raised there or discussed. The Court

there held that by electing to take under the law the widow waived any provisions of the will—so far as the will was concerned. The Court did not attempt to decide the law of apportionment without the benefit of any provisions of the will.

In the case of *Pitts* v. *Hamrick* (1955), 4 Circuit, 228 F. 2d 486, 489, Chief Justice Parker speaking for the Court held:

"The question here is whether the one-third of the estate belonging to the widow after deduction of debts and expenses of administration, but without deduction of any portion of the federal estate tax, should be taken as a deduction under the statute, or whether the share of the widow to be deducted should first be diminished by a portion of the federal estate tax. It is argued in behalf of the United States that under the South Carolina statute the widow takes only a residuary interest in the estate, that in determining such residuary interest all debts of the estate must first be deducted, including the federal estate tax, and that the burden of the estate tax is, therefore, cast upon the entire estate including the share of the widow. . . .

"It is conceded, however that a State may apportion the estate tax as it sees fit among the beneficiaries of the estate, *Riggs* v. *Del Drago*, 317 U. S. 95, 63 S. Ct. 109, 87 L. Ed. 106, and that by such apportionment it may exempt the share of the widow. There is no reason why the apportionment may not be made by the Courts of the State in application of what they conceive to be the requirements of State law in the premises as well as by its Legislature. . . . Where the estate is to receive the benefit of the deduction of the widow's share from the gross estate in order that that share may be relieved of the burden of the estate tax as Congress intended, it would be unfair and unjust to require her share to bear any portion of that tax; and we find nothing in the law of South Carolina which requires such a result or which would prevent the Court from applying equitable principles of apportionment

to relieve the share of the widow of this unfair and unjust burden. . . .

"It is inconceivable here that any part of the estate tax should be attributed to the share of the widow, where the purpose of Congress in allowing the marital deduction was to free the interest of the surviving spouse from the burden of that tax and where the estate receives the benefit of the deduction because of that interest."

In the case of *In re Burnett's Estate* (1958), 50 N. J. Sup. 482, 142 A. 2d 695, after a review of the authorities pro and con, the court determined:

". . . The legislature has failed to provide for an apportionment of the taxes in the case sub judice. In the absence of a mandatory directive in a will, a surviving spouse's share of a residuary estate should not be required to contribute proportionately to the payment of federal estate taxes when such share qualifies for the marital deduction."

In the case of *Lincoln Bank and Trust Co. et al.* v. *Huber* (1951 Ky.), 240 S. W. 2d 89, the Court said:

"It appears to us that the apparent purpose behind the enactment of the U. S. Code above was to equalize the estate tax in non-community property states, with that of community property states, and to prepare the way for elimination from the tax burden all those whose legacies or allotments do not create or add to the tax.

"Under the authority of *In re Peters* above, we conclude that if the marital allotment is a deductible item before arriving at the net taxable estate, and since that item does not add to the tax, it cannot be burdened with any portion of the federal estate tax. The surviving spouse, therefore, should receive her share undiminished by any federal estate tax."

In the above case the widow elected to take against the will and to take under the law a one-half interest

in the surplus personalty. It will be noted also that the Kentucky court prior to 1948 had consistently held that all beneficiaries receiving property included in the federal taxable estate should pay their proportionate part of the taxes assessed on that property, and these prior cases are cited and quoted from by this court in the *Pearcy* case.

In the case of *In re Rosenfeld's Estate* (1954), 376 Pa. 42, 101 A. 2d 684, the Court held that the marital deduction statute was passed to equalize a surviving spouse in all states and to free them from the Federal Estate Tax on property passing to them within the marital deduction, and that the widow should not be chargeable with the payment of any part of the tax on such property not creating such tax.

To the same effect are the cases of *In re Peters' Will* (1949), 204 Misc. 333, 88 N. Y. Supp. 2d 142; *Jerome et al.* v. *Jerome et al.* (1952), 138 Conn. 285, 93 A. 2d 139; *In re Wolf's Estate* (1954 N. Y.), 307 N. Y. 280, 121 N. E. 2d 224.

In the case of *In re: Buckhantz Estate* (1953 Calif.), 260 P. 2d 794, the Court said:

"We find no dissent in the authorities from the proposition that under prorationed statutes only that property in the probate estate which has contributed to the estate tax shall bear the impact of that tax.

. . .

"It would be a strange legal paradox to hold that a widow who receives property which is not taxed should, merely because she elects to and receives such property under the will rather than as her share of the community property, pay part of the tax levied on property bequeathed and devised to others when the marital deduction and the

bequests, devises, and transfers for public, charitable and religious uses bear no part of its burden.

. . .

"The proportion must be in the proportion that the values of the property included in the taxable estate and received by each person bears to the total value of the property so included and received by all interested persons. If property is not swept into the taxable estate for estate tax purposes, it bears no part of the tax. The value of the actually taxed property received by the widow was that remaining after deducting the value of half of the community property. It is that value only that may be used by the court in performing its function of allocation.

. . .

"The effect of tailoring the rule to what the appellants seek would not only reduce the amount of the estate tax chargeable to them and others, but to charge the widow with part of the tax levied on property received by them."

The case of *Miller et al.* v. *Hammond et al.* (1952), 156 Ohio St. 475, 104 N. E. 2d 9, determined the question on the basis of equitable principles, and held that a surviving spouse should not be chargeable on distribution with any part of the Federal Estate Tax on the basis of any share of the property included in the marital deduction. This case and the holding as affected property within the marital deduction was later overruled by *Campbell* v. *Lloyd* (1954), 162 Ohio St. 203, 122 N. E. 2d 695.

However the dissenting opinion of Stewart J., is a very logical and persuasive statement of the judicial thinking sustaining the contention that the purpose, intent and effect of the marital deduction was to free the surviving spouse of any part of the Federal Estate Tax on that portion of the property qualifying

for the marital deduction. Judge Stewart there wrote as follows:

"By Section 812(e), Title 26 U. S. Code, Congress undertook to place property of married persons residing in common-law states upon an equal basis with property of married persons residing in community-property states, so far as the federal estate tax is concerned. Where a married resident dies in a community-property state, the surviving spouse is considered to own one-half of the entire community estate in the name of the deceased spouse, which one-half is not subject to the estate tax. In a common-law state, where a surviving spouse is entitled under the statute of descent and distribution to a portion of the deceased spouse's estate, up to one-half of the estate is not, under the doctrine of equitable apportionment, subject to the federal estate tax, and therefore, should not bear the thrust of that tax which is levied against the decedent's estate."

Since Indiana does not provide for apportionment of the Federal Estate Tax, and since the will of the decedent was silent on the question of the incidence of the tax, we are of the opinion, as held by the Court in the *Pearcy* case, determined upon the principle of reason, logic and equity, that those who receive a share of net taxable estate should pay the tax proportionate to the share of that taxed property received by them. The appellee's property, being excluded under the marital deduction, was not a part of the net taxable estate and therefore the Court below was right in not subjecting that part to the Federal Estate Tax. Likewise, the Court below was equally right in subjecting the widow's support allowance, which did not qualify for the marital deduction under the Federal Estate Tax law, to its proportionate part of the Federal Estate Tax.

124

Judgment affirmed.

Ryan, C. J., Myers, J., Cooper, J., concurring.

NOTE.—Reported in 178 N. E. 2d 771.