AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY, AS TRUSTEE UNDER ARTICLE III OF THE WILL OF SHELDON A. KEY, DECEASED, BARBARA ANN KEY WILLIAMSON *v.* AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY, AS EXECUTOR OF THE ESTATE OF SHELDON A. KEY, DECEASED, VELMA P. KEY, INDIANA CENTRAL COLLEGE.

[No. 2-673A134. Filed August 6, 1974. Rehearing denied December 5, 1974. Transfer denied September 19, 1975.]

*John P. Price, Grace M. Curry, Bingham, Summers, Welsh & Spilman,* of Indianapolis, *Donald R. Willsey, Willsey & Willsey,* of Indianapolis for appellants.

*David I. Day, Jr., Marshall, Batman, Day & Swango,* of Terre Haute, *Alan H. Lobley, D. Robert Webster, Ice, Miller, Donadio & Ryan,* of Indianapolis, *Charles E. Barker,* of Indianapolis, for appellees.

### CASE SUMMARY

BUCHANAN, J.—Respondents-Appellants Barbara Ann Key Williamson (Barbara) and American Fletcher National Bank and Trust Company (AFNB) appeal from a judgment in favor of Respondents-Appellees Velma P. Key (Velma) and Indiana Central College in a will construction action filed by AFNB, as Executor of the Will of Sheldon A. Key (Key), requiring a fractional bequest to the widow to be computed on the basis of the gross estate.

We reverse.

### FACTS

The Probate Court entered twenty (20) findings of fact, a synopsis of which follows:

Key, a lawyer of thirty (30) years experience and a lifetime resident of Marion County, Indiana, died August 23, 1971. His Will, executed on January 15, 1968, and the First Codicil thereto, dated October 6, 1970, were both drafted by Key himself and were duly admitted to probate on September 20, 1971.

Decedent was first married in 1940 to Rosalind Lamb, who died in 1963. They adopted Barbara in 1951. Rosalind established for Barbara a trust with assets of approximately $275,000.00.

Velma and Key were married in 1965 and lived as husband and wife until his death in 1971. At the time of her marriage, Velma's personal assets amounted to $5,000.00, and during

his lifetime Key made certain gifts to Velma and her two (2) children and two (2) of her grandchildren. He gave his wife twenty (20) shares of Rosedale Shopping Center, Inc. stock, and purchased a lot at Lamb Lake for Velma. He also gave twenty (20) shares of Rosedale stock to each of his wife's two (2) children and five (5) shares each thereof to two (2) of her grandchildren. At the time of his death this stock was worth $1,676.00 per share.

At the hearing, pertinent testimony was given by the attorney for the Estate of Sheldon A. Key, W. Rudolph Steckler, who recalled from a telephone conversation with the Decedent in October, 1970, that Sheldon was cognizant that some property would need to be sold, but was of the opinion that the Rosedale stock should be split evenly between his daughter and wife.

A complete inventory and appraisement had not been made at the time of the hearing, nor had all of the debts and expenses been ascertained. However, the Executor testified to the assets as being approximately $810,000.00, while estimating the liabilities to be approximately $409,000.00.

Key's Will, executed January 15, 1968, and the subsequent Codicil thereto, contained the following four (4) clauses:

## "ARTICLE I

I appoint the American Fletcher National Bank and Trust Company of Indianapolis, Indiana, Executor of my Will and direct said Executor *to pay all my just debts,* funeral expenses and expenses of my last illness *out of the first moneys coming into said Executor's hands. I direct said Executor to pay all estate taxes, inheritance taxes and death duties that may be levied against my estate, or any of the individual beneficiaries hereof, out of the residue of my estate,* and ask that no charge be made against any of the individual beneficiaries hereof on account of any such payment.

I give my Executor full and complete power and authority to sell any and all real or personal property that may be necessary to carry out the provisions of this Will, without petition, appraisement, order or prior approval of any court,

without notice, and upon such terms and conditions as said Executor shall deem best, and to execute all bills of sale, deeds, acquittances and other documents in connection therewith with the same force and authority as though executed by me while living."

"ARTICLE I-A

It is my will and I do hereby give and bequeath to Indiana Central College for its Endowment Fund the sum of Fifty Thousand Dollars ($50,000.00)."

"ARTICLE II

It is my will and I do hereby give and bequeath to my beloved wife, Velma P. Key, *one-half (½) of my personal property and a life estate in one-third (⅓) of my real estate.*"

(Hereafter the Fractional Bequest Clause)

"ARTICLE III

It is my will and I do hereby give, devise and bequeath *all the rest and residue of my estate, both real and personal,* unto the American Fletcher National Bank and Trust Company of Indianapolis, Indiana, *in trust,* nevertheless, *for* the following uses and purposes:

(a) To pay and apply the income therefrom, or so much of said income as said Trustee deems necessary, to *the use* and support, maintenance, care and education *of* my daughter, *Barbara* Ann Key.

\* \* \* \* \*"

(Hereafter the Residuary Clause)

(emphasis suplied)

Barbara and AFNB object to the Court's construction of the Fractional Bequest Clause. That conclusion states in pertinent part:

"Under said Article II of decedent's Will, Velma P. Key, decedent's surviving wife, is entitled to receive a life estate in one-third of *all of the real estate* of which decedent died seized and she is also entitled to receive a one-half part of *all of decedent's personal property,* tangible and intangible, including decedent's interest in goods, money, choses in action, evidences of debt, chattels real, and any and all property of decedent other than real estate, *without diminution on account of any of decedent's debts, funeral expenses, expenses of last illness, expenses of administration or death taxes and subject to abatement, in whole or in*

*part, only after exhaustion of all other property of decedent, in the order hereinafter set forth. . . ."* (emphasis supplied)

The trial court ordered the assets to be appropriated to pay liabilities in this order:

"(i) *First, out of the rest and residue of decedent's estate,* real and personal, otherwise devised to American Fletcher National Bank and Trust Company, as Trustee under the provisions of Article III of decedent's will, *to pay such debts,* expenses of last illness, funeral expenses, expenses of administration and death taxes, *and to pay the devises to Velma P. Key,* under Article II of decedent's will, *and to Indiana Central College,* under Article I-A of said will, herein referred to;

"(ii) Then, *next, out of the property otherwise devised to Indiana Central College,* under the provisions of said Article I-A of the codicil to decedent's will, to pay any remaining such debts, expenses and death taxes and the said devise to Velma P. Key, after exhaustion of the residuary estate; and

"(iii) *Lastly, out of the property devised to decedent's widow, Velma P. Key,* under Article II of decedent's will; and, . . ." (emphasis supplied)

The judgment of the Court leaves the respective parties, based on the estimated assets and liabilities of the Estate, in about this position:

|  |  | *Gross Estate* $810,000.00 |
|---|---|---|
| *To Widow:* (Velma) |  |  |
| One-half gross personalty | $315,000.00 |  |
| Life Estate in one-third realty | 38,773.00 |  |
| (by current Federal tables) | $353,773.00 | $456,227.00 |
| *Liabilities:* |  |  |
| Debts and expenses | $374,000.00 |  |
| Death taxes | 35,000.00 |  |
|  | $409,000.00 | $47,227.00 |
| *Legacy:* |  |  |
| Cash bequest $50,000.00 | $ 47,227.00 | $ —0— |
| *To Barbara Ann:* | $ —0— | $ —0— |

## ISSUE

The single issue is:

Is the fractional bequest to Velma of one-half of the personal property and a life estate in one-third of the real estate computed on the gross estate or on the net estate?

Barbara and AFNB contend that a fractional bequest of a portion of the testator's property is computed on the basis of the net distributable estate in the absence of a contrary provision in the Will . . . and there is no such contrary provision expressed in the Will.

Velma argues that the express language of the Will indicates the intention of the testator to give her a specific devise of one-half of the personal property and one-third life estate in real property undiminished by debts, taxes or expenses, and that there is no indication in the Will that this devise is chargeable with any debts or expenses other than in accordance with the rules of abatement set forth in the Probate Code, IC 1971, 29-1-17-3, Ind. Ann. Stat. § 7-1103 (Burns Code Ed).

## DECISION

CONCLUSION—It is our opinion that the fractional bequest to Velma is a general legacy and should be computed on the basis of the net estate available for distribution, because the Will does not express a contrary intent.

To charge or not to charge the residue with the debts and expenses . . . that is the question.

If Velma's fractional bequest is to be treated like a general legacy, it is chargeable with the debts and expenses against the estate. The general rule is that when a person dies his real and personal property are chargeable with the expenses of administering the estate, and with the payment of debts and expenses. Our Probate Code expresses the general rule:

Devolution of estate at death.—*When a person dies, his real and personal property,* except homestead interests,

passes to persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it shall be subject to the possession of the personal representative and to the election of the surviving spouse and *shall be chargeable with the expenses of administering the estate, the payment of other claims* and allowances to the widow and family, except as otherwise provided in this [Probate] Code. [Acts 1953, ch. 112 § 723, p. 295] (emphasis supplied) IC 1971, 29-1-7-23, Ind. Ann. Stat. § 7-123 (Burns Code Ed.)

The general statutory scheme, then, is that a testator's property is chargeable with the debts and expenses of administering his estate.

A testator has considerable flexibility in creating a plan of distribution of his estate and may charge or exonerate certain portions of his property as to the burdens of debts, taxes, and expenses.

In order to determine whether a testator has subjected only the residue of his estate to these charges, the will must be examined to determine if such was his intent. *In re Brown's Estate* (1969), 145 Ind. App. 591, 252 N.E.2d 142; *In re Ensminger's Estate* (1969), 144 Ind. App. 338, 246 N.E.2d 217; *McCann* v. *Merchants Nat. Bank & Trust Co. of Indianapolis* (1967), 141 Ind. App. 321, 227 N.E.2d 697; *Weishaar* v. *Burton* (1962), 132 Ind. App. 597, 179 N.E.2d 211.

Applicable to a fractional bequest is the Fractional Bequest Rule which, simply stated, is that debts and expenses of administration and like costs, are deducted from a testator's gross estate in order to determine the base for computing the amount of the fractional bequest, absent a contrary intent expressed in the will. 6 PAGE ON WILLS §§ 48.2, 52.4, p. 8, 175, (Bowe-Parker 1962 Ed.) ; 57 Am. Jur. § 1191, p. 781; 169 A.L.R. p. 903.

And thus we are led to the basic problem presented by Key's Will. It purports to bequeath a fractional portion of his property to Velma without specifically stating his intent as

to whether such percentage is to be determined upon the basis of the net or gross estate. As Chief Justice Arterburn observed in *Stoner* v. *Custer* (1969), 252 Ind. 661, 251 N.E.2d 668 in construing a similar fractional bequest:

> "Obviously the entire question could have been avoided in this case if, in drafting the will, the word 'gross' or the word 'net' had been used in connection with the bequest to the appellant. We are faced with a search for what was intended by the testator under the circumstances." 252 Ind. at 666, 251 N.E.2d at 670.

Likewise, we must examine Key's Will for an expression of intention on his part that the debts and expenses of administration be chargeable against the residuary estate which created a trust for his daughter Barbara. The Will's silence as to this crucial intent is not an expression of the contrary intent required by the Fractional Bequest Rule.

Article I provides that the Executor pay all taxes from the residue of his Estate:

> "I direct said Executor to pay all estate taxes, inheritance taxes and death duties that may be levied against my Estate, or any of the individual beneficiaries hereof, out of the residue of my Estate, and ask that no charge be made against any of the individual beneficiaries hereof on account of such payments."

It is significant that while the Will specifically charges the residue with payment of death taxes, it fails to direct from which portion of the Estate the debts and expenses of administration are to be paid.

Other relevant clauses offer no help:

> ART. I-A. "It is my will and I do hereby give and bequeath to Indiana Central College . . . the sum of Fifty Thousand Dollars. . . ."

> ART. II. "It is my will and I do hereby give and bequeath to . . . Velma . . . one-half (½) . . . of my personal property and a life estate in one-third (⅓) of my real estate."

ART. III. "It is my will and I do hereby give, devise and bequeath all the rest and residue of my Estate, both real and personal, . . . to the use and support, maintenance, care and education of . . . Barbara. . . ."

The language used falls short of a clear expression of intent that the debts and expenses be charged to the residuary estate as well as the death taxes.

Faced with a will containing a similar fractional bequest and no clear indication of testator's intent as to whether the bequest was to be calculated on the basis of the gross estate or the net distributable estate, our Supreme Court in *Stoner* v. *Custer, supra,* refused to charge the debts and expenses to the residuary estate.

The Stoner Will read in pertinent part:

### "ITEM TWO

"I hereby authorized and direct my Executor hereinafter named to pay all just debts, the expenses of my last sickness and funeral and all other just debts and charges against my estate. I further direct my Executor to pay all inheritance, transfer and estate taxes which may be charged against my estate or against any legatee or devisee herein named by reason of any legacy or devise herein given, and I specifically direct said Executor that all such inheritance, transfer and estate taxes shall be paid out of the principal of my estate and I hereby waive on behalf of my estate any right to recover from any person any part of such taxes so paid. No legacy or devise in this instrument shall be diminished by the amount of any such taxes assessed as a result of my death and such legacy or devise, but any such taxes shall be paid by my Executor from the residue of my estate.

### "ITEM THREE

"*Subject to the provisions of Item 2 hereof, I* do *give* and bequeath to *my wife,* Helen Niblick Stoner, if she shall survive me, the sum of *one thousand dollars* ($1,000.00) in cash.

"*Further, I* do hereby *give,* devise and bequeath to *my wife,* Helen Niblack Stoner, if she shall survive me, *all my jewelry* of any description *and any automobile* which I may own at the time of my death.

*"Further,* I do hereby give, devise and bequeath to my wife, Helen Niblick Stoner, if she shall survive me, the *one-third (⅓) interest in all the rest of my property* which includes all of my real property, personal property and/or mixed including but not limited to my stocks, bonds, money, mortgages, notes and bank account." (Emphasis supplied.)

Chief Justice Arterburn notes that Item Two of the Stoner Will specifically provided that taxes assessed as a result of Stoner's death were to be paid from the estate's residue and that the absence of a similar provision for payment of debts and expenses was sufficient evidence of testator's intent to subject the gross estate to these liabilities.[1]

"Significantly, no similar provision was inserted which would have provided for the payment of all debts from the residue instead of from the entire corpus of the estate. *The testator chose not to charge all of the debts and expenses against the residue.* Item Two therefore shows the testator's intent to subject the entire corpus, including appellant's share, to the debts and charges of the estate." (emphasis supplied) 252 Ind. at 667, 251 N.E.2d at 671.

There were two dissents (without opinion) in Stoner and we may reasonably speculate that the dissenters seized on the language of Item Three, set out above, as indicative of an intent by Stoner to give one-third of his gross estate to his wife.

This is presumably so because, after first bequeathing his wife $1,000.00, *all* of his jewelry, *"any* automobile," he further gave her a "one-third (⅓) interest *in all the rest of my property* . . ." (Our emphasis.)

---

1. In the absence of a provision in a decedent's Will which directs the taxes to be paid out of the estate's residue, the beneficiary's distributable share is determined upon the basis of the net estate:

"Since Indiana does not provide for apportionment of the Federal Estate Tax, and since the will of the decedent was silent on the question of the incidence of the tax, we are of the opinion . . . determined upon the principle of reason, logic and equity, that those who receive a share of net taxable estate should pay the tax proportionate to the share of that taxed property received by them." *Seymour National Bank* v. *Hiedeman* (1961), 133 Ind. App. 104, 123, 178 N.E.2d 771, 780. *See also, Pearcy* v. *Citizens Bank & Trust Co.* (1950), 121 Ind. App. 136, 96 N.E.2d 918.

Be that as it may, there is no such language in the Key Will. Following the bequest of $50,000.00 to Indiana Central College, and his fractional bequest to Velma of "one-half (½) of my personal property and a life estate in one-third (⅓) of my real estate," Key devised and bequeathed *"all the rest* and residue of my Estate" to Barbara. (Our emphasis.)

The holding in *Stoner* that fractional bequests are determined on the basis of the net distributable estate is reflective of the view of at least one eminent authority in this field:

"If testator gives his widow a fractional part of his personal property in lieu of her dower and distributive share, this gift may be construed, in the absence of a contrary intent, as meaning a fractional part of the net value of the personal property after payment of expenses, debts, and taxes." *Bowe-Parker: Page on Wills* (1962 Ed.) Sec. 52.4, p. 175.

The fractional bequest rule is also recognized by a substantial majority of jurisdictions . . . as noted in 169 A.L.R. 903:

". . . the question as usually presented is whether the bequest was of a proportion of the gross estate or property, or of the estate or property remaining after deduction for debts, funeral and administration expenses, and the like, or of other legacies or devises.

"It has been recognized in a number of cases that, in the absence of some qualifying stipulation, deduction of the debts, expenses of administration, and the like, should be made from the gross estate or property of a testator in order to determine the base for ascertainment of the amount of a bequest of a specified percent, fractional part, or proportion of his 'estate' or 'property' to a named beneficiary." (footnotes omitted)

See: *In re Kirby* (1926), 199 Cal. 135, 248 P. 517; *Bell* v. *Raymond* (1850), 20 Conn. 337; *Horsey* v. *Horsey* (1857), Del., 1 Houst. 438; *Wells* v. *Menn* (1946), 158 Fla. 228, 28 S.2d 881; *See also, Briggs* v. *Hosford* (1839), Mass., 22 Pick. 288; *Fisk* v. *McNeil* (1837), Miss., 1 How. 535; *Smith* v. *Terry* (1888), 43 N.J.Eq. 659, 12 A. 204; *Stark* v. *McEwen* (1921), 15 Ohio App. 188; *Barnett's Appeal* (1884), 104 Pa. 342.

Typical is *Blakeslee* v. *Pardee* (1903), 76 Conn. 263, 56 A. 503. The widow contended that her general legacy of "two-

thirds of all the personal property of whatever kind of which I may die possessed" was two-thirds of the gross amount of the personal estate. The Court rejected that contention by stating:

"The general legacy not pecuniary is one to the testator's wife of '*two-thirds of all the personal property* of whatever kind of which I may die possessed.' An important question is presented as to the measure of this bequest. The widow claims that she is entitled to two-thirds of the gross amount of the personal estate; the residuary beneficiaries, that she is only entitled to two-thirds of the amount of personal property remaining after the payment of all claims and the expenses attending the settlement of the estate and the satisfaction of all the legacies. *We think that she is entitled to two-thirds of the net personal estate; that is, two-thirds of the personal estate less the amount of claims presented and allowed and the expenses of settlement.* A gift 'of all of which one may die possessed' carries only the net amount of the estate. In like manner a *gift of two-thirds carries two-thirds of the same total. There is no peculiar significance to be attached to the testator's choice of words.* In their connection they can have no other effect than would the words 'of all my personal estate' used in their stead." (our emphasis) 76 Conn. at 267, 56 A. at 505.

In a more recent decision, *In re Whitman's Estate* (1953), 125 N.Y.S.2d 165, the Court similarly refused to accept the widow's contention that her pecuniary legacy of "one-third of all my property" be computed on the basis of the gross estate:

"The court further holds that under paragraph First of the Will funeral expenses and debts must be paid before the '*one-third of all my property*' passing to the widow can be determined. Decedent's right of *testamentary disposition is limited to the amount of his property in excess of debts and expenses,* and he is deemed to have executed his Will subject to that limitation. *See: Matter of Wishart's Estate,* 149 Misc. 343, 267 N.Y.S. 391; *Matter of Smallman's Estate,* 138 Misc. 889, 247 N.Y.S. 593. *In the absence of a clear and unequivocal direction to the contrary, a general bequest stated in terms of a percentage is operative only with respect to the disposable, or net, estate. The bequest to the widow is a general legacy computed in terms of a percentage rather than a fixed sum, and as a general bequest it secures the advantage of freedom from tax apportionment but is nevertheless subject to diminution through*

*the payment of debts and expenses of administration."* (our emphasis) 125 N.Y.S.2d at 168.

Chief Justice Arterburn in *Stoner* also acknowledged the general rule of will construction that, absent a "contrary context" in testator's will, a fractional bequest is always subject to the payment of debts and expenses and accordingly determined by reference only to the net estate:

> ". . . our holding that appellant is entitled to her share on the basis of the net estate, is supported by the overwhelming weight of authority. The general rule is stated at 57 Am. Jur., Wills, § 1191, page 781, to be:

> "Where a will leaves a designated beneficiary a stipulated percentage or proportion of the testator's estate or property, the view is generally taken that, *absent contrary context, deduction of the debts, expenses of administration, and the like, should be made from the testator's gross holdings in order to determine the base for computing the amount of the bequest."* (our emphasis) 252 Ind. at 667, 251 N.E.2d at 671.

> *See also, In re Keller's Estate* (1955), 134 Cal. App. 2d 232, 286 P.2d 889; *In re Gardner's Estate* (1955), 35 N.J. Super. 163, 113 A.2d 527; *In re Petroff's Estate* (1956), 5 Misc.2d 318, 159 N.Y.S.2d 735; *St. Louis Union Trust Co.* v. *Krueger* (1964), Mo., 377 S.W.2d 303.

Velma seizes upon the introductory caveat clause in Item Three of the *Stoner* Will, i.e., "Subject to the provisions of Item Two hereof . . ." as significantly distinguishing it from the Key Will. It is true that no such caveat appears in the Key Will, but it merely emphasizes that death taxes be chargeable against the residue (as in the Key Will) and that the Executor do what he is obliged to do by law . . . pay all charges against the estate. So no intent is evidenced by either will, with or without the caveat, that debts and expenses be paid out of the residue. In fact, the wording of Key's pay debts clause is a stronger indication of intent that the debts and expenses be deducted from the gross estate than in Stoner Will. Barbara's brief explains it this way:

> " 'First moneys' in the hands of an Executor are obviously general assets, or 'gross estate', as distinguished

from residuary estate. Residue does not exist at that point in time. If debts and costs are to be paid first, out of first moneys, and before distribution, they must necessarily be paid 'out of' the gross estate."

Velma further differentiates the Key Will from those construed by other jurisdictions applying the fractional bequest rule by asserting that they dealt with fractional bequests of "estates".

She argues that her bequest is not a fractional part of Key's "estate", but is instead specifically devised personal "property" and which is free from any charges against the estate as the Fractional Bequest Rule applies only to fractional bequests of estates.

No authority supports this distinction. Unless the testator specifically manifests his intent to apply different meanings to "estate" and "property", they are generic terms having the same meaning:

"A gift of testator's 'property' may, if not controlled by the context, pass both realty and personalty, 'property' being like 'estate' a word of general import." 4 Page on Wills, § 33.4 at p. 297.

*See also, Morgan* v. *McNeeley* (1891), 126 Ind. 537, 26 N.E. 395.

"[T]he terms 'estate' and 'property' are used interchangeably by the courts in this connection [Fractional Bequests Rule], and the cases frequently cite both 'estate' and 'property' decisions as authority for their conclusions . . ." 169 A.L.R. 903.

In both *Blakeslee* v. *Pardee* and *In re Whitman's Estate* decisions quoted above, the decedents bequeathed fractional portions of their "personal property" and "property" and the court nevertheless applied the fractional bequest rule. *See also, In re Estate of West* (1969), 203 Kan. 404, 454 P.2d 462; *Miller et al.* v. *Miller* (1950), Tex. Civ. App., 230 S.W.2d 237.

Hoping to avoid application of the Fractional Bequest Rule, Velma describes her bequest as a "specific devise of specific, generic property without qualification, condition, or diminution for the debts of the Key estate."

This, too, must fail. Fractional bequests of a testator's property. have never been considered *specific* bequests:

> "A bequest or devise of a specified fraction or proportion of testator's property is a general devise, bequest or devise." 6 Page on Wills, § 48.2 at p. 8.

> ". . . bequests of all testator's personal property, *an aliquot part thereof*, of all property except certain things, or a residue of testator's property have been held to amount to general legacies." (footnotes omitted) Atkinson, Handbook of the Law of Wills, (2 Ed. 1953) at pp. 733-734.

> "A *General Legacy*, . . . is a bequest out of the general assets of the testator's estate, such as a gift of money or *other thing in quantity and not in any way separated or distinguished from other things of the same kind." In re Brown's Estate* (1969), 145 Ind. App. 591, 601, 252 N.E. 2d 142, 150.

*See also, Warters* v. *Selleck* (1930), 201 Ind. 593, 170 N.E. 20; *Nye* v. *Grand Lodge A.O.U.W.* (1894), 9 Ind. App. 131, 36 N.E. 429; *Roquet* v. *Eldridge* (1888), 118 Ind. 147, 20 N.E. 733; *Stout* v. *LaFollette* (1878), 64 Ind. 365.

Velma's final effort to avoid the Fractional Bequest Rule rests on the "guiding hand" of the Abatement Statute found in our Probate Code, IC 1971, 29-1-17-3, Ind. Ann. Stat. § 7-1103 (Burns Code Ed.). That Statute in pertinent part states as follows:

> "29-1-17-3 [7-1103]. Order in which assets appropriated — Abatement — General rules — Contrary provisions, plan or purpose.— (a) Except as provided in subsection (b) hereof, shares of the distributees shall abate, for the payment of claims, legacies, the widow's or family allowance, the shares of pretermitted heirs or the share of the surviving spouse who elects to take against the will, without any preference or priority as between real and personal property, in the following order:

(1) Property not disposed of by the will;

(2) Property devised to the residuary devisee;

(3) Property disposed of by the will but not specifically devised and not devised to the residuary devisee;

(4) Property specifically devised.

\* \* \*

(b) If the provisions of the will or the testamentary plan or the express or implied purpose of the devise would be defeated by the order of abatement stated in subsection (a) hereof, the shares of distributees shall abate in such other manner as may be found necessary to give effect to the intention of the testator. [Acts 1953, ch. 112, § 1703, p. 295.]

Abatement is not a rule of construction. The Abatement Statute establishes the order in which the "shares of the distributees" are to be distributed to the beneficiaries *after* those shares have been determined.[2]

If a deficiency of assets should appear at the time of distribution, then and only then does the abatement statute become relevant.

Velma's reliance upon *Easterday* v. *Easterday* (1937), 105 Ind. App. 80, 10 N.E.2d 764 and *Whitman* v. *Whitman* (1908), 41 Ind. App. 99, 83 N.E. 520 is misplaced. Neither case applies the principle of abatement in lieu of construing a fractional bequest.

In *Stoner* the applicability of these two cases was dismissed with this language:

"The appellant cites *Easterday* v. *Easterday* (1937), 105 Ind. App. 80, 10 N.E.2d 764 and *Whitman* v. *Whitman* (1908), 41 Ind. App. 99, 83 N.E. 520. In our opinion neither case is in point. The *Easterday* case involved the simple question of abatement of a legacy. The will in the *Whitman* case contained language that is clearly distinguish-

---

2. "Abatement is the reduction of a legacy because of the insufficiency of the estate of the testator to pay all of his debts, charges, and legacies in full. If an estate proves insufficient for all purposes, the law makes provision for abatement, *and it is only out of the balance remaining after payment of all debts of the testator and obligations of his estate that a testamentary gift may be made, and the testator is deemed to have executed his will subject to such limitation.*" (our emphasis) 96 C.J.S. Wills § 1153, p. 955. [footnotes omitted]

able from that involved in this case. 252 Ind. App. 669, 251 N.E.2d at 672.

In sum, the fractional bequest of a testator's property is to be treated like any other general legacy. Unless the will specifically indicates a decedent's intent to bequeath a general legacy free from debts, expenses and taxes, these liabilities are deducted from the gross estate.

There is no direct expression of intent or reasonable inference in any portion of Key's Will that the residue only be charged with payment of the debts and expenses—only that it be charged with death taxes. Accordingly, the Fractional Bequest Rule operates to reduce Velma's share by debts and expenses.

The trial court's judgment is reversed and this case remanded with instructions that judgment be entered in favor of AFNB and Barbara in a manner not inconsistent with this decision.

Reversed and remanded.

Sullivan, P.J. and Garrard, J., concur.

NOTE.—Reported at 314 N.E.2d 810.